PEOPLE v RUSSELL

Docket No. 105077. Submitted November 7, 1989, at Grand Rapids. Decided February 20, 1990. Leave to appeal applied for.

Richard J. Russell was convicted of two counts of first-degree criminal sexual conduct following a jury trial in Kalamazoo Circuit Court, Phillip D. Schaefer, J. During the jury selection process and following the initial panel's having been passed for cause, the trial judge suggested that each side excuse peremptorily up to three jurors at a time in order to speed up the jury selection process. No objection was made to the court's suggestion, and the prosecution dismissed three jurors by peremptory challenges and defense counsel followed by dismissing two. The prosecution then excused three jurors and the defense excused three jurors. The trial judge then indicated that the failure of either side to exercise three peremptory challenges at a time would be treated as a pass as to the jurors in the box. Defense counsel objected to the procedure. Three rounds were then conducted in which defense counsel excused three, three, and two jurors in the respective rounds. The court then indicated that counsel would no longer be required to excuse more than one juror at a time and the panel would not be deemed to be accepted until both counsel had passed. Defense counsel used one peremptory challenge in each of the next two rounds and indicated his satisfaction with the jury, having used only sixteen of his twenty peremptory challenges. Defendant appealed.

The Court of Appeals *held:*

1. The procedure adopted by the trial court is clearly at variance with the court rule which contemplates that the parties shall exercise their peremptory challenges one at a time and in an alternating fashion and that a new juror will immediately be selected and examined to replace the juror that is excused. The fact that defense counsel did not immediately object to the procedure did not preclude the later objection nor does the fact that less than all the peremptory challenges were

REFERENCES
Am Jur 2d, Jury §§ 235-237, 241, 251, 254.
See the Index to Annotations under Peremptory Challenges.

used preclude the claim of prejudice arising from the procedure adopted by the court.

2. The trial court properly instructed the jury that it could consider the fact that defendant was the stepfather of the victims in considering the question of whether the victims suffered the requisite mental anguish.

3. The question whether the prosecution's expert witness improperly vouched for the credibility of the victims was not preserved for appellate review.

4. The court's questioning of the expert witness did not result in error requiring reversal.

Reversed.

SAWYER, J., dissented. He would hold that, while the jury selection procedure was improper, reversal is not required in this case. He would affirm.

JURY — JURY SELECTION — PEREMPTORY CHALLENGES — COURT RULES.

   It is error mandating reversal for a trial court, over a criminal defendant's objection, to require during jury selection that multiple peremptory challenges be exercised at the same time if it was known that more than one juror was going to be dismissed; failure to object to such a procedure initially does not waive the defendant's right to object to the procedure later in the jury selection process; failure to use all of one's peremptory challenges does not preclude claiming a denial of a fair trial arising out of the improper jury selection process (MCR 2.511).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Carrie L. Klein,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan),* for defendant on appeal.

Before: MAHER, P.J., and HOLBROOK, JR., and SAWYER, JJ.

MAHER, P.J. Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA

28.788(2)(1)(f), for which he received concurrent sentences of twenty to forty years. Defendant's convictions arose from allegations pertaining to separate incidents involving his two stepdaughters, ages thirteen and sixteen. Defendant appeals as of right. We reverse.

On appeal, defendant first contends he was denied a right to a fair trial before an impartial jury because he was required to exercise three peremptory challenges at one time during a portion of the jury selection process. We agree.

Trial began on June 30, 1987, with jury voir dire. An initial panel of fourteen prospective jurors was selected and voir dire conducted. After both sides passed for cause, the trial court asked the parties to excuse by peremptory challenges up to three jurors at a time in order to move the selection process along. The court announced it was not going to hold the parties to this procedure, but requested of them that, if they knew in good faith they were going to excuse at least three jurors, it wanted them to do it at one time. No objection was raised to this procedure.

In line with the court's request, the prosecution proceeded to dismiss three jurors at the same time through peremptory challenges, immediately followed by two peremptory challenge dismissals by defense counsel. After the dismissed jurors were replaced, the above procedure was repeated. On the second round of peremptory challenges, the prosecutor peremptorily dismissed three jurors followed by three peremptory dismissals by defense counsel.

On the second day of trial, the court met with the respective attorneys in chambers and expressed concern over the length of time it was taking to select a jury. As a result, the court

changed the manner in which jury selection would
be conducted. The court announced:

> Beginning immediately, you are limited to ten
> questions per juror, and when you exercise pe-
> remptory challenges, if you do not exercise three, I
> will treat that as a pass, meaning that you will not
> be permitted to perempt any juror that you pass
> on.
>
> * * *
>
> You can exercise one, two or three, but if you
> fail to exercise three, I will treat that as a pass to
> the jurors in the box.

Although defense counsel immediately objected
to this procedure, jury selection continued under
the newly imposed rules. This procedure continued
during the next three rounds of peremptory chal-
lenges wherein defense counsel exercised peremp-
tory challenges of three, three and two jurors
respectively.

Thereafter, however, the court again changed its
ruling and announced it would no longer require
counsel to excuse more than one juror at a time
and that any pass on the panel would not be
construed as an acceptance until both counsel had
passed. Following this ruling, jury selection contin-
ued with defense counsel exercising single peremp-
tory challenges during each of his next three
opportunities. After exercising sixteen of his
twenty peremptory challenges, defense counsel ex-
pressed satisfaction with the jury.

In support of its ruling mandating multiple
peremptory challenges, the trial court announced
it was relying on MCR 2.511(E)(3)(b). This court
rule, however, does not authorize multiple chal-
lenges at the same time. In this regard, MCR
2.511(F) provides:

Replacement of Challenged Jurors. After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge exercised, another juror must be selected and examined before further challenges are made. This juror is subject to challenge as are other jurors.

Defendant contends that pursuant to our Supreme Court's decision in *People v Miller,* 411 Mich 321; 307 NW2d 335 (1981), the trial court's departure from this court rule mandates reversal. We agree.

In this case, there was clearly a violation of the court rule when the trial court required defendant to exercise multiple peremptory challenges. In *Miller, supra,* p 326, our Supreme Court disapproved of the "struck jury method" and held:

A defendant is entitled to have the jury selected as provided by the rule. Where, as here, a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal.

In line with this decision, this Court has repeatedly held that reversal is required for failure to follow the court rule relating to the jury selection procedure. *People v Key,* 121 Mich App 168, 179; 328 NW2d 609 (1982); *People v Adkins,* 117 Mich App 583, 586-587; 324 NW2d 88 (1982); also see *People v Glover,* 154 Mich App 22, 44; 397 NW2d 199 (1986), lv den 430 Mich 867 (1988).

While the people correctly argue that reversal is not required when a defendant fails to object to the procedure, *People v Lewis,* 160 Mich App 20, 32; 408 NW2d 94 (1987), lv den 429 Mich 860 (1987); *People v Lawless,* 136 Mich App 628, 636; 357 NW2d 724 (1984), lv den 422 Mich 881 (1985),

we cannot agree with their contention that defendant's failure to object to the jury selection process at the beginning of trial precludes reversal.

Although the court initially expressed its desire that multiple peremptory challenges be exercised if the parties knew they were going to dismiss more than one juror, it did not make this procedure mandatory. Thus, any decision to deviate from the court rule was left to the discretion of the parties, and they were perfectly free to exercise only one peremptory challenge if they so chose. Because the exercise of multiple peremptory challenges was merely permissive, an objection was not necessary. An objection only became necessary when the trial court, midway through the selection process, made the exercise of multiple peremptory challenges mandatory. At that point, defendant timely objected to the procedure.

The people also contend that because defendant only exercised sixteen of his allotted twenty peremptory challenges and expressed satisfaction with the makeup of the jury, there is no indication he was deprived of a fair and impartial jury.

In *Miller, supra,* our Supreme Court rejected the notion that a showing of prejudice was required in order to reverse a conviction for violation of the court rule. The Court noted that given the fundamental nature of the right to trial by an impartial jury, and the inherent difficulty of evaluating such claims, a requirement that a defendant demonstrate prejudice would impose an often impossible burden. *Miller,* p 326. The Court specifically stated that failure to follow the rule in the face of a challenge to the improper procedure requires reversal. *Id.* Also see *Adkins, supra.*

Although defendant did not use all twenty peremptory challenges, the potential for prejudice was nevertheless present as a result of the manda-

tory requirement that multiple challenges be exercised. The court indicated that a failure to exercise three peremptory challenges constituted a pass as to the remaining jurors in the box who could not then be later peremptorily dismissed. If defendant wanted to peremptorily dismiss one juror but was unsure about dismissing another juror, he was denied the opportunity to make a comparison between the first juror's replacement and the other existing juror then on the panel. In order to avoid the risk of not being able to later dismiss this juror, defendant was required to exercise a peremptory challenge even though a replacement juror might prove less favorable. The ability of defense counsel to effectively exercise his peremptory challenges was therefore reduced.

Finally, a different result is not required because the improper selection procedure existed for only a portion of the jury selection process. A defendant's fundamental right to be tried by an impartial jury entitles him to have the jury selected in accordance with the court rule procedure during the entire selection process. Accordingly, defendant's convictions are reversed and defendant is entitled to a new trial.

Although our reversal on this first issue renders defendant's remaining issues moot, we will nevertheless review them for purposes of completeness.

Defendant next contends the court erred when it instructed the jury that they could consider the stepparent relationship as a factor in determining whether the complainants suffered mental anguish. In *People v Petrella,* 424 Mich 221, 270-271; 380 NW2d 11 (1985), our Supreme Court indicated that one of the factors a jury could consider in determining whether a complainant suffered mental anguish as a result of alleged criminal sexual conduct was whether the defendant was the com-

plainant's father. The Court reasoned that greater mental anguish can be expected in such a situation given the societal taboo on incest and loss of a healthy relationship with one's father. *Id.,* p 273. We believe that where the evidence showed defendant had been married to the complainants' mother for ten years, that complainants had lived in the same household with defendant for that period and that defendant was viewed as a father-figure, the trial court did not err in allowing the jury to consider the stepparent relationship as one factor in determining the presence of mental anguish.

Defendant also contends he was denied a fair trial because the prosecution's expert witness improperly vouched for the credibility of the two minor children. Because the testimony complained of was not objected to at trial and was elicited by defense counsel, this evidentiary issue has been waived. *People v King,* 158 Mich App 672, 677; 405 NW2d 116 (1987).

We also agree there was no error requiring reversal when the trial court questioned the prosecution's expert regarding the propensity of sexually abused children to make inconsistent statements concerning alleged sexual acts. MRE 614(b) allows the court to question a witness called by another party. In this case, the court asked a single question that was presented in an impartial, noninflammatory manner. Further, each of the parties was provided with the opportunity to further question the witness in response to the court's question. We find no error requiring reversal in this instance.

Finally, the court did not err at sentencing when it considered evidence elicited at trial concerning the ongoing nature of alleged sexual activity, since defendant was permitted an opportunity

at sentencing to rebut such allegations. See *King, supra,* p 679.

Reversed.

HOLBROOK, JR., J., concurred.

SAWYER, J. *(dissenting).* I respectfully dissent.

While I agree with the majority that the method by which the trial court began the jury selection procedure was improper, I do not believe that reversal is required under the facts of this case.

It is clearly established that the proper method to be employed to select a jury in a criminal trial is that, after each successful challenge, either for cause or peremptorily, the challenged juror is to be replaced before another challenge is exercised. *People v Miller,* 411 Mich 321, 325-326; 307 NW2d 335 (1987); *People v Lewis,* 160 Mich App 20; 408 NW2d 94 (1987). Thus, when the trial court required defendant to exercise three peremptory challenges at a time, the trial court clearly violated the dictates of *Miller, supra.*[1] Moreover, I agree with the majority that defendant effectively objected to the procedure once the trial court required that three peremptory challenges be exercised at a time, with the failure to do so constituting a "pass to the jurors in the box."

Nevertheless, reversal is not required. Since defendant was charged with a capital crime, he was entitled to twenty peremptory challenges.

[1] The trial court's initial practice of requesting, without requiring, the parties to exercise up to three peremptory challenges at a time is somewhat more problematic. Even this procedure arguably violates *Miller, supra*; however, MCR 2.511(E)(3)(a) suggests that exercising more than one peremptory challenge at a time is permissible since the rule states that first "the plaintiff and then the defendant may exercise *one or more* peremptory challenges" until both pass. (Emphasis added.) In any event, since defendant did not object to this procedure, it does not constitute error requiring reversal.

MCL 768.13; MSA 28.1036.[2] Defendant exercised
five peremptory challenges the first day, when the
use of multiple peremptories was merely re-
quested. The second day, when multiple peremptor-
ies were required, defendant exercised eight addi-
tional challenges, in groups of three, three and
two, for a total of thirteen challenges. Thereafter,
the trial court recognized the error of its ways and
announced that counsel would only have to exer-
cise one peremptory at a time and that any juror
could be challenged, even after a pass, until both
counsel had passed. Under this method, the proper
one, defendant exercised three more peremptory
challenges, bringing his total to sixteen. At this
point, both counsel passed and defense counsel
expressed his satisfaction with the jury.

While I recognize that a defendant is not re-
quired to show prejudice to obtain a reversal of his
conviction under *Miller, supra,* when an improper
jury selection method is utilized, I do not believe
that *Miller* requires reversal in the context of this
case. First, this case is not directly analogous to
*Miller.* In *Miller,* the trial court employed a jury
selection method of empaneling seventy-three ju-
rors, questioning them as a group, and then the
attorneys were permitted to exercise their chal-
lenges until the panel was reduced to eleven ju-
rors. At this point, an additional thirty-seven ju-
rors were empaneled and the process continued.
After there were no further challenges, the four-
teen remaining jurors with the lowest numbers
were selected to hear the case. *Miller, supra* at
324.[3] In this case, an initial panel of fourteen
jurors was selected and the struck jurors were

[2] It should be noted, however, that the 1989 revisions to the court
rules have reduced that number to between seven and twelve peremp-
tory challenges in capital cases, depending on the number of defen-
dants being tried together. See MCR 6.412(E)(1).

[3] The Supreme Court's version of the facts differs somewhat from

replaced after each group of peremptories was exercised. Furthermore, according to this Court's opinion, two of the three codefendants in *Miller* exercised all of their peremptory challenges, while the third exercised all but one challenge.[4]

Generally, it is necessary for a defendant to exhaust his peremptory challenges in order to preserve an objection to the jury selection. See *People v Holliday,* 144 Mich App 560, 575; 376 NW2d 154 (1985). In the case at bar, defendant exercised only eight of his twenty permitted peremptory challenges while operating under the requirement that he exercise three at a time. Moreover, defendant had only exercised thirteen of his twenty challenges when the trial court corrected its mistake and started allowing counsel to exercise one peremptory at a time and to do so with respect to any juror in the box. Under this procedure, defendant exercised three of his remaining seven peremptory challenges.

I acknowledge that, as the majority argues, a requirement to exercise more than one peremptory challenge at a time influences the jury selection process since a defendant might dismiss a juror he was unsure of, and to whom he would otherwise take a "wait and see" attitude, since he would not wish to pass as to that juror and waive the right to peremptorily challenge the juror at a later point. The disadvantage is, as pointed out by the majority, that the defendant must dismiss the second and third jurors without the ability to compare them to the new juror who replaces the first juror

those reported in this Court's opinion. This Court indicated that jurors were excused until fourteen remained, rather than that the fourteen with the lowest numbers were selected from those who remained. See *People v Miller,* 88 Mich App 210, 217; 276 NW2d 558 (1979). Furthermore, this Court's opinion indicates that thirty-eight, rather than thirty-seven, additional jurors were seated. *Id.*

[4] See *Miller,* 88 Mich App 217.

excused. Thus, the defendant might see the jury panel go from bad to worse very quickly and with little control over the process. This concern cannot be ignored, nor do I do so. Had the process of requiring the exercising of three peremptory challenges at a time continued until defendant exhausted his peremptories, or at least until he was within three challenges of exhausting them, I would agree with the majority that reversal would be required.

However, I believe that the trial court changed the procedure early enough in the process to correct the error. Defendant had seven peremptory challenges left when the trial court relented and allowed the exercise of one challenge at a time. Defendant could have used these challenges to exclude any juror on the panel he viewed as unfavorable. He exercised only three of those challenges, not utilizing four of them. I can think of no tactical reason why defendant would choose to leave four challenges unused. It is clear to me that defendant was satisfied with the jury empaneled. Had defendant exercised all of his peremptories, then it could be maintained that he was dissatisfied with the jury and that the improper selection method employed during jury selection fatally impeded his ability to select a fair and impartial jury. I might even concede this point if defendant had exercised all but one of his challenges.[5] How-

---

[5] I recognize that it is a common trial tactic not to use one's last peremptory challenge if at all possible since if one does so, the replacement juror may be worse than the juror replaced with nothing the attorney can do to remedy the situation. Thus, while an improper jury selection method might have impeded the defendant's ability to wisely use his peremptory challenges, the effect might not have been so great as to warrant defense counsel exercising his last peremptory solely to preserve the issue for appeal. Furthermore, I note that in *Miller, supra,* the Supreme Court reversed all of the convictions, even though only two of the three codefendants had exhausted their peremptories, with the third codefendant exercising all but one peremptory challenge.

ever, in the case at bar, defendant did not exercise all of his peremptory challenges, nor even all but one. Rather, defendant left four challenges unused. How then can it be said that defense counsel's ability to effectively exercise his peremptory challenges was reduced?

I recognize that the Supreme Court has ruled that a defendant need not show harm to have his conviction reversed on the basis of improper jury selection, since it would be realistically impossible for the defendant to do so. *Miller, supra* at 326. This case, however, does not involve the question whether defendant can show harm by the procedure employed. Rather, defendant has affirmatively demonstrated his satisfaction with the jury empaneled: he failed to use four peremptory challenges and explicitly stated to the trial court that he was satisfied with the jury. In my opinion, this constitutes a waiver of the issue by defendant.

The evidence presented at trial established that defendant had raped his two stepdaughters. Defendant further announced that he was satisfied with the jury which was selected while still having four peremptory challenges unused. I am satisfied that defendant's guilt was determined by a fair and impartial jury.

I would affirm.