PEOPLE v COLON

Docket No. 185694. Submitted October 7, 1998, at Grand Rapids. Decided December 29, 1998, at 9:45 A.M. Leave to appeal denied 459 Mich

—.

Thomas J. Colon was convicted by a jury in the Jackson Circuit Court, Chad C. Schmucker, J., of unlawfully driving away an automobile, breaking and entering an occupied dwelling, assault with intent to do great bodily harm less than murder, armed robbery, and possession of a firearm during the commission of a felony. He was sentenced as a third-offense habitual offender. He appealed, alleging, in part, that the court's method of jury selection violated MCR 2.511(F). The procedure employed by the court was to seat thirteen prospective jurors in the jury box and six prospective jurors on a different bench and have voir dire of all nineteen prospective jurors. After the voir dire, the parties could challenge any of the nineteen prospective jurors for cause. The parties then were allowed to exercise peremptory challenges with regard to the thirteen prospective jurors in the jury box. If a person in the jury box was removed for cause or by peremptory challenge, the next person on the bench would take the removed person's place in the jury box. That procedure would continue until twelve prospective jurors remained. The court would then call out seven more prospective jurors and conduct voir dire of only those seven. Defense counsel objected to the procedure used, used all but one peremptory challenge, and did not express satisfaction with the jury as impaneled.

The Court of Appeals *held*:

1. The defendant sufficiently preserved his challenge to the court's method of jury selection. Under the circumstances of this case, where defense counsel followed the common trial strategy of using all but one peremptory challenge, the issue was not waived by the failure to exhaust the defendant's peremptory challenges.

2. The jury selection procedure utilized is not the procedure described and contemplated by MCR 2.511 (F). The panel of potential jurors seated and examined was not equal in size to the jury that heard the case, and once a prospective juror was removed, a

new prospective juror was not selected and examined before further challenges were made.

3. Although actual prejudice to the defendant was not shown, prejudice need not be shown. The matter must be reversed and remanded for a new trial.

4. The prosecution showed, by clear and convincing evidence, that the victim's identification of the defendant during the trial had a sufficiently independent basis and was not based on any suggestiveness surrounding the preliminary examination. Under the totality of the circumstances, the defendant failed to show that there was a substantial likelihood of misidentification. The court did not err in allowing the identification during the trial.

Reversed and remanded.

CORRIGAN, C.J., dissenting, stated that the court's failure to follow the jury selection procedure prescribed in the court rules should be viewed as harmless error under the circumstances of this case. The violations did not concern the procedural mechanisms designed to ensure the effective use of peremptory challenges or dilute the effectiveness of defense counsel's use of peremptory challenges. The court's procedure aided and assisted defense counsel in exercising the challenges and was not so confusing as to render the process defective.

1. JURY — CRIMINAL LAW — TRIAL — JURY SELECTION PROCEDURE — APPEAL — PRESERVING QUESTION.

A defendant generally must exhaust peremptory challenges in order to preserve for appellate review an objection to the jury selection procedure; where the selection procedure is challenged before the process begins, the failure to follow the procedure prescribed by the court rules requires reversal; a defendant's use of the commonly followed trial strategy of using all but one peremptory challenge may be found not to constitute a waiver of an objection to the jury selection procedure where the defendant objected to the procedure and did not express satisfaction with the jury.

2. JURY — CRIMINAL LAW — JURY SELECTION PROCEDURE.

MCR 2.511(F) provides that after prospective jurors are seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge is exercised, another prospective juror must be selected and examined before further challenges are made, and that prospective juror is subject to challenge as are other jurors; the rule

contemplates the seating and examination of a panel of prospective jurors equal in size to the jury that will hear the case.

3. JURY — CRIMINAL LAW — JURY SELECTION PROCEDURE.

A defendant is entitled to have a jury selected as provided by MCR 2.511(F); where the jury selection procedure is challenged before the process begins, the failure to follow the procedure prescribed by the rule requires reversal.

4. CRIMINAL LAW — TRIAL — IDENTIFICATION TESTIMONY.

A witness who was exposed to an impermissibly suggestive pretrial identification procedure may make an in-court identification only if the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification; the defendant must show that, in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification; relevant factors include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John G. McBain,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

*Ashford & Associates* (by *Linda D. Ashford*), for the defendant on appeal.

Before: CORRIGAN, C.J., and DOCTOROFF and FITZGERALD, JJ.

FITZGERALD, J. Following a jury trial, defendant was convicted of unlawfully driving away an automobile (UDAA), MCL 750.413; MSA 28.645, breaking and entering an occupied dwelling, MCL 750.110; MSA 28.305, assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, armed robbery, MCL 750.529; MSA 28.797, and possession of a fire-

arm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced as a third-offense habitual offender, MCL 769.11; MSA 28.1083, to prison terms of 80 to 120 months for the UDAA conviction, 240 to 360 months for the breaking and entering conviction, 160 to 240 months for the assault conviction, 360 to 540 months for the armed robbery conviction, and two years for the felony-firearm conviction.[1] Defendant appeals as of right. We reverse and remand for a new trial.

This case arises out of a break-in at the home of James Coss in the late evening hours of September 14, 1994. During the break-in, Coss was severely beaten and robbed. The prosecution's theory was that defendant and Richard Coopes broke into Coss' home looking for money, and when Coss indicated that he had no money, defendant and Coopes tied up and brutally beat Coss and ransacked his home. The prosecution claimed that defendant and Coopes eventually loaded Coss' radio, television, videocassette recorder, computer, and answering machine into Coss' automobile and drove away. Defendant's theory was that although he admitted his participation in the robbery, his consumption of alcohol and crack cocaine prevented him from forming the requisite intent necessary to be guilty of all the charges.

I

Defendant argues that the trial court's method of jury selection violated MCR 2.511(F), thus entitling him to a new trial.

---

[1] Defendant was also charged with assault with intent to commit murder, MCL 750.83; MSA 28.278. This charge resulted in a mistrial.

A

Before jury selection began, the trial court stated:

> Before we pick the jury, I told you I was going to try
> something different. I should try it in a few more civil cases
> rather than changing it on a criminal case. We're going to
> seat 13 jurors . . . . [A]nd then we're going to seat six jurors
> on the bench over there, and we'll have voir dire of all 19
> jurors. I will seat 13 jurors. After jury voir dire, we'll have
> challenge for cause. You'll challenge any juror from 1 to 19
> that you want for cause.
>
> When we have peremptory challenges, you will only chal-
> lenge 1 through 13 as a peremptory challenge. If a juror is
> removed for cause or peremptory, the next juror on the
> bench will take that juror's seat, and we'll continue going
> until we have 12 jurors remaining.
>
> Then I'll call out seven more jurors. We'll have a voir dire
> of only those seven jurors, not of the other 12 that were
> there before.
>
> *    *    *
>
> When we call up a new juror, we're not reopening voir
> dire. It's voir dire for that juror.

Defense counsel objected to the proposed jury selec-
tion procedure at a pretrial hearing and then subse-
quently, at the same hearing, appears to have
approved the procedure. However, before voir dire on
the first day of trial, defense counsel again objected
to the procedure used. During jury selection, defense
counsel exercised all but one of his peremptory chal-
lenges provided by MCR 6.412(E). At the conclusion
of voir dire, defense counsel did not express satisfac-
tion with the jury as impaneled and indicated that he
found one of the impaneled jurors unsatisfactory.
Defense counsel noted that because of the way the
jury was selected, he was confident that he knew

which potential juror would be called had he exercised his final peremptory challenge. He stated that, "there was a reason that I did not exhaust my peremptories . . . the juror I would have ended up with would have been highly objectionable, there would be more reasons to object to him more than anybody I had dismissed previously."

B

As a general rule, it is necessary for a defendant to exhaust his peremptory challenges in order to preserve an objection to the jury selection procedure. *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992). This is not, however, an absolute requirement. See, e.g., *People v Miller*, 411 Mich 321, 326; 307 NW2d 335 (1981), wherein the Court stated:

> [G]iven the fundamental nature of the right to trial by an impartial jury, and the inherent difficulty of evaluating such claims, a requirement that a defendant demonstrate prejudice [resulting from the jury selection procedure used] would impose an often impossible burden. A defendant is entitled to have the jury selected as provided by the rule. Where, as here, a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal. [Citation omitted.]

*Miller* requires that a defendant object to the jury selection procedure before the process begins, but made no mention of a requirement that a defendant exhaust all peremptory challenges.[2]

In *People v Russell*, 182 Mich App 314; 451 NW2d 625 (1990), rev'd 434 Mich 922 (1990), this Court

---

[2] In fact, in *Miller*, two of the defendants used all their peremptory challenges, but a third defendant left one challenge remaining.

reversed the defendant's conviction of first-degree criminal sexual conduct because of a defective jury selection procedure. This Court held, over Judge SAWYER's dissent, that the trial court's procedure was a clear violation of the court rule and that the defendant's failure to exercise all his peremptory challenges did not preclude reversal. *Id.* at 319-320.

In dissent, Judge SAWYER agreed that the trial court's methods at the beginning of jury selection were improper and that the defendant effectively objected to the erroneous procedure. He concluded, however, that reversal was not required for two reasons. First, the trial court changed the procedure early enough to correct the error, and second, the defendant failed to use four of the twenty peremptory challenges he was allotted and expressed satisfaction with the jury. *Id.* at 324-326. However, Judge SAWYER, noting that a common trial tactic is to save one's last peremptory challenge to avoid replacing the last removed prospective juror with a juror who "may be worse" and having no remedy to the situation, stated he might concede that a defendant need not exercise his last peremptory challenge solely to preserve the issue for appeal. *Id.* at 325, n 5.

In *People v Paasche*, 207 Mich App 698, 702-703; 525 NW2d 914 (1994), this Court was confronted with the issue whether a challenge to the jury selection procedure was waived because only four of five allowable peremptory challenges were used. This Court, being unable to determine how many peremptory challenges were allocated to the defendant and how many were allocated to the jointly tried codefendant, concluded that if the defendant used all but one peremptory challenge, it would not deem the

issue waived because of the "commonly followed trial strategy" of using all but one peremptory challenge. *Id.* at 703, citing *Russell, supra* (SAWYER, J., dissenting).

Although defense counsel did not exercise one remaining peremptory challenge, we find that *Russell* is distinguishable. First, defendant objected to the jury selection procedure. Second, defense counsel did not express satisfaction with the jury. Under these circumstances, we find the specific language in *Paasche* and the dissent in *Russell* regarding the common trial strategy of preserving one peremptory challenge to be persuasive. Thus, we conclude that defendant has sufficiently preserved his challenge to the trial court's method of jury selection.

C

MCR 2.511(F) provides:

Replacement of Challenged Jurors. After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge exercised, another juror must be selected and examined before further challenges are made. This juror is subject to challenge as are other jurors.

MCR 2.511(F) is applicable to criminal trials through MCR 6.412(A).

In *Miller, supra* at 324, the Court decided the validity of the following jury selection procedure:

Seventy-three jurors were initially called and questioned as a group by the trial judge. None was excused for cause. The prosecutor and three defense attorneys then exercised peremptory challenges in rotation until only 11 jurors remained, at which point an additional 37 jurors were called and questioned. The peremptory challenge process

continued until there were no further challenges and the 14 remaining jurors with the lowest numbers were selected to hear the case.

Our Supreme Court stated that GCR 1963, 511.6, the predecessor of the similarly worded MCR 2.511(F), "contemplates the seating and examination of a panel of potential jurors equal in size to the jury that will hear the case. As a juror is challenged, either peremptorily or for cause, another will be seated before further challenges are exercised." *Miller, supra* at 325-326. The Court further noted that "[a] defendant is entitled to have the jury selected as provided by the rule" and where "a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal." *Id.* at 326.

The jury selection procedure utilized in this case is clearly not the procedure described in and contemplated by MCR 2.511(F). The panel of potential jurors seated and examined was not equal in size to the jury that heard the case, and once a prospective juror was dismissed, a new prospective juror was not selected and examined before further challenges were made. The trial court's procedure examined nineteen prospective jurors at once, and when, after a total of seven challenges were exercised and twelve potential jurors remained, *then* the trial court selected and examined seven new prospective jurors. Although there is no indication that defendant suffered actual prejudice as a result of this procedure, because of the fundamental nature of the right to trial by an impartial jury and the difficulty in examining such claims, prejudice need not be shown. *Miller, supra.* Thus, we are compelled to reverse and remand for a new trial.

See also *People v Schmitz*, 231 Mich App 521; 586 NW2d 766 (1998).

II

Defendant contends that the trial court erred in failing to suppress an in-court identification because the identification was tainted by an impermissibly suggestive confrontation during the preliminary examination. Because this issue may arise on retrial, we will address it briefly.

The decision to admit an in-court identification would not be reversed on appeal unless it is clearly erroneous. *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification. *People v Kurylczyk*, 443 Mich 289, 303, 318; 505 NW2d 528 (1993). The defendant must show that in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification. *Id.* at 302, 306, 318. Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective. *Id.* at 306. The fact that the prior confrontation occurred during the preliminary examination, as opposed to a pretrial lineup or showup, does not necessarily mean that it cannot be considered unduly suggestive. *People v Leverette*, 112 Mich App 142, 154; 315 NW2d 876 (1982). When examining the totality of the circumstances, relevant factors

include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation. *Kurylczyk, supra* at 306.

Here, there is no question that the preliminary examination was a suggestive atmosphere in that defendant was placed in the courtroom in prison garb. However, the victim testified that he observed defendant for at least five minutes in a small bedroom where the lights were on. Two days after the incident, the victim identified the main perpetrator as an Hispanic male with curly hair, which is apparently an accurate description of defendant. Less than two weeks passed between the time of the beating and the preliminary examination, which is a "relatively short span of time," that "does not reduce the reliability" of the identification. See *id.* at 308. Under the totality of the circumstances, defendant has failed to show that there was a substantial likelihood of misidentification. The prosecution showed, by clear and convincing evidence, that the victim's identification of defendant had a sufficiently independent basis and was not based on any suggestiveness surrounding the preliminary examination.

III

In light of our resolution, we need not address the remainder of the issues raised by defendant.

Reversed and remanded for a new trial. Jurisdiction is not retained.

DOCTOROFF, J., concurred.

CORRIGAN, C.J. (*dissenting*). I respectfully dissent. While I do not condone the trial court's experiment, I would hold that its failure to follow the jury selection procedure prescribed in the court rules was harmless error under the circumstances of this case.

In *People v Miller*, 411 Mich 321, 324; 307 NW2d 335 (1981), the defendants challenged the trial court's use of a form of the "struck jury method"[1] whereby the court called and examined seventy-three prospective jurors before allowing the prosecutor and defense attorneys to exercise peremptory challenges. When eleven prospective jurors remained, the trial court called and questioned an additional thirty-seven prospective jurors. The prosecutor and defense attorneys then exercised their remaining peremptory challenges, with the fourteen prospective jurors with the lowest juror numbers constituting the jury.

*Miller* did not hold that the "struck jury method" was unconstitutional, but, rather, merely held that it did not comport with GCR 1963, 511, now MCR 2.511.[2] The Court determined nonetheless that the

---

[1] Several forms of the "struck jury method" exist. See, e.g., *United States v Morris*, 623 F2d 145, 151-152 (CA 10, 1980) (the trial court qualified twenty-two prospective jurors and the parties exercised all their peremptory challenges, with the six remaining jurors constituting the jury); *Amsler v United States*, 381 F2d 37, 44 (CA 9, 1967) (the trial court qualified thirty-seven prospective jurors and the parties exercised their peremptory challenges, with the first twelve of the remaining sixteen jurors constituting the jury and the other four serving as alternates); see, generally, 50A CJS, Juries, § 4, pp 134-135. Historically, the "struck jury method" consisted of the parties striking names from a list of prospective jurors until twenty-four remained and then proceeding normally regarding those persons. *Swain v Alabama*, 380 US 202, 217, n 21; 85 S Ct 824; 13 L Ed 2d 759 (1965), overruled on other grounds *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986); *People v Miller*, 88 Mich App 210, 217, n 1; 276 NW2d 558 (1979), rev'd 411 Mich 321; 307 NW2d 335 (1981).

[2] The jury selection procedure set forth in MCR 2.511 is not constitutionally mandated. Cf. *Pointer v United States*, 151 US 396; 14 S Ct 410; 38

trial court's failure to follow the jury selection procedure set forth in the court rules was error requiring reversal:

> Although the defendants' claims of confusion in the jury selection process are not implausible, we agree with the Court of Appeals that there is nothing in this record from which one could affirmatively find prejudice to the defendants from the selection process. However, given the fundamental nature of the right to trial by an impartial jury, and the inherent difficulty in evaluating such claims, a requirement that a defendant demonstrate prejudice would impose an often impossible burden. See *People v Gratz*, 35 Mich App 42; 192 NW2d 304 (1971). *A defendant is entitled to have the jury selected as provided by the rule. Where, as here, a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal. The "struck jury method" or any system patterned thereafter is disapproved and may not be used in the future.* [*Miller, supra* at 326 (emphasis added).]

This Court has consistently followed *Miller's* directive and reversed convictions where the defendant did not waive his objection to a jury selection procedure that did not comply with the court rules. See, e.g., *People v Schmitz*, 231 Mich App 521, 535; 586 NW2d 766 (1998); *People v Paasche*, 207 Mich App 698, 702; 525 NW2d 914 (1994); *People v Key*, 121 Mich App 168, 179; 328 NW2d 609 (1982); *People v*

L Ed 208 (1894); *Morris*, n 1 *supra* at 152 (collecting cases holding that the struck jury method does not deprive a defendant of his right to a fair and impartial jury). A defendant, in fact, has no constitutional right to exercise peremptory challenges. *Swain*, n 1 *supra* at 219; *People v Schmitz*, 231 Mich App 521, 528; 586 NW2d 766 (1998). Nevertheless, peremptory challenges are an important tool for ensuring a fair trial. *Id.* The United States Supreme Court long ago characterized the peremptory challenge as "one of the most important of the rights secured to the accused." *Pointer, supra* at 408. Therefore, errors affecting peremptory challenges require reversal. *Schmitz, supra* at 530-532.

*Adkins*, 117 Mich App 583, 586; 324 NW2d 88 (1982). Our Supreme Court has, however, repeatedly stated in recent years that it does not favor rules of automatic reversal. See, e.g., *People v Graves*, 458 Mich 476, 481; 581 NW2d 229 (1998); *People v Belanger*, 454 Mich 571, 575; 563 NW2d 665 (1997). This Court ordinarily will not reverse a conviction on the basis of nonconstitutional error if it is highly probable that the error did not affect the verdict. *Graves, supra* at 482-483. Courts have concluded, however, that errors affecting peremptory challenges require reversal because it is virtually impossible to demonstrate prejudice from errors surrounding the selection of jurors. *Miller, supra* at 326; *Schmitz, supra* at 530-532.

Applying these principles in reviewing the trial court's deviation from the court rules, this Court must first ascertain whether the trial court employed the "struck jury method" of jury selection. If so, *Miller* requires reversal. If not, this Court must consider whether the jury selection procedure affected the defendant's right to exercise peremptory challenges. Cf. *id.* An error affecting peremptory challenges requires reversal, whereas other deviations from the court rules may be harmless.

In this case, the trial court did not employ the "struck jury method" rejected by *Miller.* The trial court impaneled thirteen prospective jurors before selecting six additional prospective jurors who would, in the order that they were called, replace those removed from the panel. The court conducted voir dire of all nineteen prospective jurors. The court excused for cause four of the prospective jurors on the panel and three of the additional ones. The three

remaining prospective jurors from the original group of six additional prospective jurors took the places of the three who were excused from the panel. The trial court then randomly selected seven new prospective jurors, with the first called taking the vacant seat on the panel and the other six forming the pool of replacements. The court conducted voir dire of the seven new prospective jurors, excusing two of the replacements for cause. The parties then alternately exercised peremptory challenges. After each challenge, a replacement (in the order they were called) took the place of the excused person on the panel. When the prosecutor excused a prospective juror from the panel and no preselected replacements remained to take the empty seat, the trial court randomly selected seven more prospective jurors, with the first called taking the vacant seat on the panel. As before, the trial court conducted voir dire of the new prospective jurors and considered challenges for cause. The process continued, with the court twice having to randomly select a new group of seven additional prospective jurors, until defendant exercised his second-to-last peremptory challenge. At this point, only three prospective jurors remained in the venire.

The trial court directed that the first of the three prospective jurors take the vacant seat on the panel, with the others forming the pool of replacements. The court conducted voir dire of the three prospective jurors, excusing none of them for cause. The prosecutor then passed. Defense counsel likewise passed even though he would have preferred to excuse one of the members of the panel. Counsel reasoned that if he had excused that member, the prosecutor would have exercised a peremptory challenge to excuse the

member's replacement, who was the director of Prison Legal Services, a nonprofit corporation that provides legal services for prisoners. The sole remaining replacement would then occupy the vacant seat on the jury panel. Counsel, having no remaining challenges, would not have been able to excuse that prospective juror, whom he believed was more objectionable than the prospective juror he would have excused with his final peremptory challenge.[3]

Because the trial court did not employ the "struck jury method," this Court must determine whether the trial court's deviation from the court rules affected defendant's right to exercise peremptory challenges. Cf. *id.* The court rules protect a defendant's right to a fair and impartial jury through three procedural mechanisms designed to ensure the effective use of peremptory challenges. First, the court rules contemplate the sitting and examination of a panel of prospective jurors equal to the number of jurors who will hear the case.[4] MCR 6.410(A); MCR 6.411; *Miller, supra* at 325-326. Second, under MCR 2.511(E)(3), the parties alternately exercise peremptory challenges until either they both pass on the panel as it is constituted or they exhaust their challenges. *Schmitz, supra* at 529-530. Third, MCR 2.511(F) requires that the trial court replace an excused prospective juror

---

[3] The trial court reduced the number of jurors to twelve shortly before closing argument by excusing a juror who could not attend the trial that day because her child was ill.

[4] The court rules provide for the examination of prospective jurors randomly selected from the jury venire. MCR 6.412(A); MCR 2.511(A). In a criminal case cognizable in the circuit court, the jury must consist of twelve jurors unless the parties and the court agree to a lesser number. MCR 6.410(A). The trial court may, however, impanel more than twelve jurors, provided that before deliberations begin the court reduces the number of jurors to that required to decide the case. MCR 6.411.

before considering further challenges. *Miller, supra* at 325-326; *Adkins, supra* at 587.

On scrutiny, the jury selection method employed in this case violated the court rules in two respects. First, the trial court randomly preselected replacements in groups rather than individually selecting them after it excused a member of the panel. Second, the trial court conducted voir dire of, and considered challenges for cause to, all the original nineteen prospective jurors instead of only the thirteen on the panel. Consistent with this procedure, the trial court called seven new prospective jurors after exhausting the original pool of preselected replacements and, as before, examined them and considered challenges for cause against them. Importantly, neither of these violations concerned the procedural mechanisms designed to ensure the effective use of peremptory challenges.

The trial court's failure to comply with the court rules was harmless error because its deviation did not dilute the effectiveness of defense counsel's use of peremptory challenges. The trial court's decision randomly to preselect the replacements aided counsel in using his challenges because, on all but three occasions, counsel knew who would replace the excused person. The court's decision to conduct voir dire of the potential replacements in groups after selecting them, instead of individually examining them after they replaced a person on the panel, likewise assisted counsel in exercising his challenges by providing him with additional information about the prospective jurors. That counsel had to keep track of nineteen prospective jurors instead of merely the thirteen who constituted the panel was not so confusing as to

render the selection process defective. Accordingly, I would hold that the trial court's deviation from the court rules was harmless error.