# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MACK JOHNSON HOWELL,

      Defendant-Appellant.

UNPUBLISHED
February 20, 2018

No. 335449
Macomb Circuit Court
LC No. 2015-003353-FC

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, for a late-night holdup at a convenience store. On appeal, defendant challenges the admission of the victim's identification of him from a photographic lineup. We discern no error and affirm.

## I. BACKGROUND

In the early morning hours of April 3, 2014, a masked bandit robbed a 7-Eleven store in Eastpointe. Roselyn Gaston was working alone when the man entered, garbed all in black. He had "a box over his hand," which he claimed covered a gun. The man demanded that Gaston relinquish the cash in the register.

Gaston testified that she could see the "area of [the robber's] eyes." When his mask shifted, Gaston was also able to see part of the robber's nose. Gaston described the robber as a dark-skinned black male. The robber was "a few inches" taller than Gaston, who stood at five feet, four inches. Gaston described that he had a medium build and was around 180 pounds. The robber touched the cash register till when Gaston removed it from the drawer, but officers were unable to secure usable fingerprints. The robber dropped the box that had been covering his hand, but officers were also unable to gather usable identifying evidence from that item.

The store manager reviewed footage from exterior security cameras. He noticed a man "hiding himself" near "the dumpster and wall." Following the robbery, a police dog alerted to a paper bag containing a beer can near the area in question. Five months later, DNA on the can was matched to defendant. A straw also found inside the bag, however, carried DNA from an unidentified female.

-1-

After the DNA analysis was completed, a detective presented a photographic array to Gaston. Gaston first "pick[ed] out one incorrect person." Gaston testified that the detective queried, "Are you sure of that person?" Gaston indicated that she was not certain "and then proceeded to take my hands and put my hands over the face so that I could see just the eyes and what I had seen and picked out number one": defendant. Gaston claimed she focused "on what I had seen back when the robbery had happened" and was able to identify defendant by "remembering the eyes because that was something that I could never forget." "One eye look[ed] a little lower than the other." Gaston "was 100 percent sure" about her identification.

Eastpointe police detective Matthew Hambright testified that he arranged the photographic lineup after DNA collected near the scene was matched to defendant. Hambright uncovered information that defendant was 5½ feet tall and had weighed between 140 and 205 pounds over the years. Hambright described that Gaston quickly identified an individual in the lineup, asserting, "I think that's him." Hambright asked, "Are you sure?," which he claimed "is something I say anytime anybody identifies somebody." Gaston indicated that she was not actually certain and Hambright instructed her to "review all the photographs" and "[t]ake some time with it." Gaston then "took her hands and covered the top and bottom of" her first pick's face before declaring that he was not the robber. After repeating this process with the other photographs in the lineup, Gaston identified defendant. Gaston told Hambright that she was "a hundred percent" certain.

Defendant's fiancée and her daughter provided an alibi for defendant on the night in question. Defendant also presented an expert to testify regarding the weakness of Gaston's eyewitness identification. The jury rejected these defenses and convicted defendant as charged.

## II. ANALYSIS

Defendant now contends that the admission of this evidence denied him a fair trial. As defendant failed to request an evidentiary hearing to consider the suggestiveness of the photographic lineup or otherwise object to the admission of this evidence, his challenge is unpreserved. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Generally, we would review the trial court's ruling on a motion to suppress, as well as its underlying factual findings, for clear error. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). However, we review unpreserved challenges for plain error affecting the defendant's substantial rights and grant relief only when the defendant is actually innocent or where the alleged error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

Photographic identification procedures violate a defendant's due process rights when they are so "impermissibly suggestive" as to "give[] rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). "The fairness of an identification procedure is evaluated in light of the total circumstances. . . ." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). Defendant contends that the lineup in this case was impermissibly suggestive because the pictures should have been cropped to show only that portion of the face observed by Gaston during the robbery. Defendant further contends that Detective Hambright tainted the identification by implying to Gaston that she initially

-2-

selected the wrong individual. These errors were highly prejudicial, defendant argues, given the weak basis for Gaston's identification.

A photographic array is not deemed suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotations omitted). Defendant has never claimed that the photographs used in the array were so dissimilar as to render the lineup impermissibly suggestive. Instead, defendant contends that the police should have cropped the photos and showed Gaston only the area around the array members' eyes, as this was all she saw of the robber. Defendant has provided absolutely no legal support requiring the use of photoshopped images in an array. In any event, Gaston independently created this effect by using her hands to limit her view of the men's faces in the photographs. There is no record indication that Gaston was prejudicially swayed by seeing the entire face of the individuals in the lineup.

Defendant further contends that Gaston's identification was influenced by Detective Hambright's commentary during the lineup. Specifically, defendant asserts that Hambright suggested to Gaston that her first selection was "incorrect" by inquiring whether she was certain of her choice. As noted by our Supreme Court in *People v Anderson*, 389 Mich 155, 216; 205 NW2d 461 (1973):

> Suggestion may be implanted deliberately by over-zealous investigators, by a hint, impressive manner, gesture, tone of voice, facial expression or in other ways. The rare case of intentional suggestion, however, is not our concern here but rather we are concerned with the probability of innocent suggestive influences from a host of sources. It would serve no useful purpose here and there is not sufficient space to catalog the many forms of subtle, unintentional suggestive influences. . . . The importance of the existence of so many possible forms of unintentional suggestion lies in the fact that we are peculiarly susceptible to it and the fact that it is an unconscious process so that we are unable to detect its influence while it operates.

We discern no improper influence on Hambright's part. At the lineup's onset, Hambright read Gaston a standardized disclaimer:

> You'll be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not obliged t[o] identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties.

Hambright did not suggest otherwise during the lineup. Although Hambright asked Gaston if she was certain of her selection after she identified the person in position 5, he asked the same question after Gaston reconsidered and identified defendant. Accordingly, defendant's claim that the lineup procedure employed in this case was impermissibly suggestive and therefore constitutionally defective is without merit.

Defendant devotes a significant portion of his appellate argument to describing that Gaston's identification of defendant "could not be weaker and less reliable." Defendant emphasizes that Gaston had no "independent basis" for identifying defendant during the lineup that was not conducted until five months after Gaston's brief encounter with the ski-mask-clad robber. Defendant also notes that Gaston's description of the robber's height and weight evolved over time as her memory was tested and that she first identified another individual in the photographic array. However, whether an eyewitness has an independent basis for identifying a suspect only comes into play if the identification procedure is deemed impermissibly suggestive. See *Gray*, 457 Mich at 115; *People v Kachar*, 400 Mich 78, 95-97; 252 NW2d 807 (1977); *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998). Under these circumstances, defendant's challenges go to the credibility of Gaston's identification, not its admissibility. "The credibility of identification testimony is a question for the trier of fact," *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000), not a preliminary consideration for admissibility. Accordingly, the court did not err in admitting Gaston's identification of defendant.

In the alternative, defendant contends that his trial counsel was ineffective for failing to object or move for the preclusion of Gaston's identification. Because defendant failed to raise this issue in the trial court and this Court denied his motion to remand for an evidentiary hearing, *People v Howell*, unpublished order of the Court of Appeals, entered March 9, 2017 (Docket No. 335449), our review is limited to errors apparent on the existing record. See *People v Horn*, 279 Mich App 31, 37-38; 755 NW2d 212 (2008).

"[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 777 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a convicted defendant's claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solomonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors the result of the proceedings would have differed. *Id*. at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of professional assistance," and that his counsel's actions represented "sound trial strategy." *Strickland*, 466 US at 689 (quotation marks and citation omitted).

As noted, the identification procedure used in this matter was not impermissibly suggestive and therefore was admissible at trial. Counsel cannot be faulted for failing to bring a futile motion to exclude this evidence. *People v Buie*, 298 Mich App 50, 66; 825 NW2d 361, 372 (2012). And defense counsel vigorously attacked the strength and credibility of Gaston's identification of defendant. Counsel presented an expert witness to explain how the passage of time and Gaston's brief limited view of the robber while under severe emotional strain reduced the likelihood that Gaston could identify the perpetrator. Counsel also emphasized these points

on cross-examination of Gaston. This was sound strategy. Accordingly, defendant cannot establish that he is entitled to a new trial.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle