*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER CHARLES-EUBANKS WOOD,

Defendant-Appellant.

UNPUBLISHED
September 12, 2019

No. 342900
Kent Circuit Court
LC Nos. 17-002032-FC
          17-007323-FC

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The jury determined that defendant committed two robberies: the first at a Walgreens in Grand Rapids, Michigan, and the second a week later at a Marathon gas station in Wyoming, Michigan. The two robberies were substantially similar. The trial court held a single trial for both robberies, and the jury found defendant guilty of armed robbery in both cases. Defendant appeals as of right, challenging an in-court identification of him as the robber, challenging his joint trial for both robberies, and alleging that he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

The prosecutor charged defendant with two separate robberies. In both instances, the robber entered the store, walked to the drink cooler, chose a drink, and walked to the register to purchase the drink. After the transaction was complete, the robber asked the clerk to make change for a dollar. When the clerk opened the drawer to make change, the robber either stated or implied that he was armed and attempted to take cash out of the open drawer.

During the Walgreens robbery, when the clerk opened the cash drawer, the robber stated that he had a gun and reached into the drawer. The clerk stepped back, put her hands up in the air, and let the robber take all the money out of the cash register. Four days later, the clerk watched the surveillance video of the robbery and she identified defendant as the robber. A police officer also testified that defendant was the robber shown on the surveillance video, and the prosecutor played the video for the jury. In addition, police witnesses testified that defendant's DNA was found on a hat worn by the Walgreens robber.

During the Marathon robbery, the clerk thought the robber was armed because of the way he was lifting up his shirt. The robber put the clerk in a chokehold while demanding money. The clerk refused to comply, locked the cash drawer, and pushed the robber out. As the robber left the gas station, he threatened that he was going to come back for the clerk. Shortly after the robbery, the owner of the gas station showed the clerk the surveillance video of the robbery. The Marathon clerk identified defendant as the robber.

The surveillance video of the Marathon robbery was also shown on television, and one of defendant's federal probation officers recognized defendant from the video. She contacted local police and identified defendant as the robber. The probation officer testified at trial that she recognized defendant by his profile and a distinctive coat that he wore. Furthermore, a police witness testified that when he arrested defendant the day after the Marathon robbery, defendant was wearing "virtually the exact clothes depicted in the surveillance footage from the robbery."

At trial, defendant challenged evidence of the Marathon clerk's in-court identification of him as the robber, arguing that before her testimony at the preliminary examination, the prosecutor showed the clerk an impermissibly suggestive photograph—in which defendant was wearing handcuffs—and that this tainted the clerk's in-court identification of defendant. The trial court held an evidentiary hearing outside the presence of the jury regarding the photograph shown to the clerk. The clerk's testimony on this point is contradictory: the clerk testified that defense counsel showed her a photo, then testified that the prosecutor showed her a photo, then testified that she could not remember who showed her the photo. At times, she stated that she saw one photo, and at other times, she stated that she saw two photos. Outside the presence of the jury, however, the prosecutor testified that he did not show the witness any photographs until cross-examination. The trial court found the prosecutor's testimony more credible than the clerk's testimony, found that the clerk's in-court identification was not obtained through unnecessarily suggestive means, and ruled that the clerk's in-court identification of defendant was admissible.

Aside from her testimony regarding the photograph shown to her at defendant's preliminary examination, the Marathon clerk testified that she had a good opportunity to see defendant during the offense: in the well-lit gas station, she watched him enter the store, walk to the drink coolers, take a drink, walk back to the register, and begin the transaction. The clerk also had an opportunity to observe defendant up close when he physically grabbed her and told her to give him money from the cash drawer. Her in-court identification occurred less than one month after the robbery, and she was able to provide a detailed description of the robber that matched defendant, which she did consistently throughout the proceedings. The clerk neither identified anyone else as the robber, nor did she ever express doubt that defendant was the robber; she testified that she was "100 percent sure" that defendant was the man who robbed her. Finally, the clerk testified multiple times that her in-court testimony was uninfluenced by the photograph she saw before the preliminary examination. The clerk stated repeatedly that her identification was based on her independent recollection of the robbery and her close encounter with the robber.

The jury convicted defendant of two counts of armed robbery, MCL 750.529. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to a term of 30 to

90 years in prison for each conviction, with the sentences to run concurrently. Defendant appeals his convictions.

## II. ANALYSIS

## A. EYEWITNESS IDENTIFICATION

Defendant first argues that the Marathon clerk's in-court identification of him as the robber should have been suppressed because it was obtained through an impermissibly suggestive identification procedure. We disagree.

"A due process violation presents a constitutional question that this Court reviews de novo." *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). Generally, a trial court's decision to admit evidence regarding a pretrial identification will not be reversed unless it is clearly erroneous. *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993), impliedly overruled on other grounds by *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Kurylczyk*, 443 Mich at 303. "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

Due process protects defendants from pretrial identifications obtained through unnecessarily suggestive procedures. *Moore v Illinois*, 434 US 220, 227; 98 S Ct 458; 54 L Ed 2d 424 (1977); *Hickman*, 470 Mich at 607. "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302.

> When examining the totality of the circumstances, relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation. [*People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998).]

If the witness's in-court identification is based on a sufficiently independent basis, however, that may "purge the taint" of an illegal identification. *Id*. at 304. To determine if an independent basis for identification exists, the following factors are relevant:

> 1. Prior relationship with or knowledge of the defendant.
>
> 2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the alleged criminal act.
>
> 3. Length of time between the offense and the disputed identification. . . .

4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. [The mental state of the witness at the time of the crime.]

8. Any idiosyncratic or special features of defendant. [*People v Kachar*, 400 Mich 78, 95-96; 252 NW2d 807 (1977).]

Defendant argues that the prosecutor violated his due-process rights by showing the Marathon clerk an impermissibly suggestive photograph of him before the preliminary examination. This argument is without merit. The trial court was uniquely situated to judge the credibility of the witnesses before it. See MCR 2.613(C). Given the competing testimony and the trial court's conclusion that the prosecutor's testimony was more credible than the clerk's testimony, the trial court did not clearly err when it concluded that the prosecutor did not show the clerk any photographs before the preliminary examination. See MCR 2.613(C). Therefore, the trial court did not err in concluding that the clerk's in-court identification of defendant was not obtained in an unnecessarily suggestive manner. See *Kurylczyk*, 443 Mich at 302. Defendant is not entitled to relief on this issue. See *Hickman*, 470 Mich at 607; *Kurylczyk*, 443 Mich at 302.

Additionally, even if the prosecutor had shown the clerk an unduly suggestive photograph before the preliminary examination, her in-court identification remains admissible because she had an independent basis for identifying defendant as the robber. The clerk had the opportunity to observe defendant closely during the robbery; she identified defendant within one month of the robbery; she consistently provided a description of the robber that matched defendant; and she never expressed doubt that defendant was the robber. Applying the *Kachar* factors, the clerk's testimony shows that she had an independent basis for the identification. Therefore, the trial court did not err when it admitted the clerk's in-court identification of defendant as the robber. See *Kachar,* 400 Mich at 95-96.

## B. ADMISSION OF EVIDENCE

Defendant next argues that the jury was improperly shown a prejudicial photograph of defendant; the photograph showed defendant in handcuffs and wearing similar clothing to what the robber was wearing when he committed the Marathon robbery. We conclude that defendant has waived review of this issue on appeal. "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). In this case, when the prosecutor presented the photograph for admission into evidence, defense counsel stated that he had "no objection." Therefore, the issue has been waived on appeal, and we decline to review it.

## C. JOINT TRIAL

Defendant also argues that the trial court erred when it tried the two cases jointly. This argument is without merit.

> Whether joinder is appropriate is a mixed question of fact and law. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. However, the ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts. [*People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014) (cleaned up).]

MCR 6.120(B) allows trial courts to join cases against a single defendant "when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense."

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

> (a) the same conduct or transaction, or

> (b) a series of connected acts, or

> (c) a series of acts constituting parts of a single scheme or plan. [MCR 6.120(B).]

In this case, defendant's conduct in the two robberies was substantially similar, evidencing a "single scheme or plan." See MCR 6.120(B)(1)(c). Defendant's common scheme involved entering stores when they were nearly empty, purchasing a drink, asking for change for a dollar, pretending to be armed, and assaulting the clerk while attempting to take cash from the open drawer. The two robberies for which defendant was tried happened only seven days apart. The factual similarities between the two robberies evidence a common plan—a series of connected acts constituting a single scheme or plan to perpetuate armed robberies. Therefore, the trial court did not err when it joined the cases under MCR 6.120(B). See *People v Williams*, 483 Mich 226, 233-234; 769 NW2d 605 (2009).

## D. MRE 404(b)

Defendant also argues that the trial court erred when it tried the two cases jointly because evidence of each robbery was inadmissible in the other case under MRE 404(b). This argument is also without merit.

Evidence of a person's character is generally not admissible to prove the propensity of that person to act in conformance with that character. Under MRE 404(b), "[e]vidence of other crimes, wrongs, or acts" is admissible only for purposes that do not "risk impermissible

inferences of character to conduct." MRE 404(b)(1); *People v Starr*, 457 Mich 490, 495-496; 577 NW2d 673 (1998).

Our Supreme Court set forth a four-part standard for admissibility of such other acts evidence in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The trial court must determine:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id*. at 55.]

The Supreme Court emphasized that MRE 404(b) only prohibits other-acts evidence that "risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015). Therefore, "if the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character, Rule 404(b) is not implicated." *VanderVliet*, 444 Mich at 64.

When other-acts evidence is admitted to prove identity, this Court applies the test articulated in *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982), to determine whether the proffered evidence is admissible. See *People v Chandler*, 502 Mich 879; 912 NW2d 859 (2018). "*Golochowicz* identifies the requirements of logical relevance when the proponent is utilizing a modus operandi theory to prove identity" as the prosecutor did in this case. *VanderVliet*, 444 Mich at 66. To be admissible under the *Golochowicz* standard, four requirements must be met:

> (1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009) (cleaned up).]

Applying the other-acts evidence's logical relevance under the *Golochowicz* standard, we conclude that the trial court did not abuse its discretion by admitting the evidence.

With regard to the first *Golochowicz* requirement, defendant challenged the existence of substantial evidence that he committed the two robberies. Yet, there is no question that substantial evidence exists that defendant committed both robberies. Surveillance video was available for both robberies. Regarding the Walgreens robbery, both the clerk and the police identified defendant as the robber shown on the surveillance video. Furthermore, defendant's DNA was found on a hat worn by the robber. Regarding the Marathon robbery, not only did the clerk identify defendant as the robber, but defendant's federal probation officer recognized defendant from the surveillance video shown on television and contacted local police to identify defendant as the robber. Furthermore, at the time of his arrest, defendant was also wearing the identical clothes depicted in the surveillance video of the Marathon robbery.

The third *Golochowicz* requirement is also easily satisfied. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action. In other words, is the fact to be proven truly in issue?" *People v Denson*, 500 Mich 385, 401; 902 NW2d 306 (2017) (cleaned up). In this case, defendant argued that he was not the person who committed the robberies, thereby making identity a material issue at trial. See *People v Lee*, 434 Mich 59, 95; 450 NW2d 883 (1990).

The second *Golochowicz* requirement presents the closest question. As explained in *Golochowicz*, 413 Mich at 310, where the other-acts evidence is offered to prove identity, "the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused." (Cleaned up). "The commonality of circumstances must be so unusual and distinctive as to be like a signature" and "much more is demanded than the mere repeated commission of crimes of the same class." *Id*. at 310-311 (cleaned up). The "manners or systems employed by the perpetrator of the uncharged crime and the crime in question" must involve "such distinctive, unique, peculiar or special characteristics as to justify an ordinarily reasonable juror to infer that both were the handiwork of the same person." *Id*. at 312.

Given that the two robberies occurred within one week of each other, the timing of the crimes weighs in favor of a finding that the two acts were sufficiently similar, such that they should be admitted as evidence of defendant's identity as the robber. See *Denson*, 500 Mich 385 (noting that, although there is no limit for the admission of other-acts evidence, remoteness in time between the prior act and the charged act will limit the logical relevance of the other-acts evidence).

The remaining factors also weigh in favor of a finding of similarity. In both instances, the robber entered the store, walked to the drink cooler, chose a drink, and walked to the register to purchase the drink. After the transaction was complete, the robber asked the clerk to make change for a dollar. When the clerk opened the drawer to make change, the robber either stated or implied that he was armed and attempted to take cash out of the open drawer. We conclude that the peculiarities of defendant's conduct in each circumstance are sufficiently similar to each other and sufficiently atypical as compared to the general class of offenses to earmark the charged offenses as defendant's handiwork. Accordingly, the other-acts evidence passes the second *Golochowicz* requirement. Moreover, even if we had concluded otherwise, the "decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." *Golochowicz*, 413 Mich at 322. Thus, given the closeness of the question, we would still be unable to conclude that the trial court abused its discretion by finding that the evidence logically tended to prove defendant's identity.

Further, even if the other-acts evidence had been admitted erroneously, the error would be harmless, as in *People v Chandler (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued August 21, 2018 (Docket No. 333209). In the context of other-acts evidence, "a preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Denson*, 500 Mich at 409 (cleaned up). In

determining whether an error was outcome determinative, this Court focuses on the nature of the error "in light of the weight and strength of the untainted evidence." *Id*. at 409-410 (cleaned up).

Here, there was abundant other evidence from which the jury could reasonably conclude that defendant was the suspect who committed both robberies. The jury viewed the surveillance video of the robberies and had the opportunity to compare that video to defendant's appearance; several witnesses identified defendant as the robber in both cases; defendant's DNA was found on a distinctive hat worn during one of the robberies; and defendant was arrested while wearing clothing that was identical to that worn by the suspect during the other robbery. In light of this overwhelming evidence of defendant's guilt, any error in the admission of the other-acts evidence was harmless.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he received ineffective assistance of counsel, alleging that his trial counsel made a number of errors. We conclude that defendant's trial counsel did not render ineffective assistance of counsel.

To preserve the issue of effective assistance of counsel on appeal, a defendant must move for a new trial or for a *Ginther* hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). In this case, defendant moved for a *Ginther* hearing, and therefore preserved this issue for appellate review. See *id*. Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because no *Ginther* hearing was held, however, this Court's review is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

To prove ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Payne*, 285 Mich App at 190. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). The fact that defense counsel's strategy ultimately failed does not render it ineffective assistance of counsel. *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Finally, the failure to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant first argues that defense counsel was ineffective for failing to object to the joinder of his cases. This argument is contradicted by the record evidence. Before trial, defense

counsel explicitly objected to the cases being joined. This argument has no merit because it is factually contradicted by the record.

Defendant next argues that defense counsel failed to communicate "timely and properly" with defendant, alleging that counsel stopped answering his calls and failed to visit him upon request. This argument is also contradicted by the record. During defendant's preliminary examination in the Walgreens case, defense counsel indicated that he had spoken with defendant about plea offers. At trial, before the jury was sworn, defendant was given a plea offer and a chance to speak to his attorney. The trial court asked defendant if he needed to consult further with his attorney, and defendant replied that he did not. Defendant neither revealed any communication issues with his attorney nor took the opportunity to speak to his attorney. Additionally, defendant spoke directly to the trial court at sentencing and raised several perceived problems with trial. During this monologue, defendant did not complain that his attorney failed to communicate with him. The record does not reveal that more communication was necessary: defense counsel raised compelling arguments on defendant's behalf, cross-examined witnesses, and called an alibi witness to support defendant's innocence. Additionally, defendant has provided no explanation of why further communication was necessary. Defendant has failed to show that his counsel's performance was deficient for failure to communicate.

Defendant also argues that defense counsel erroneously advised him that two witnesses would not be allowed to testify at trial because their testimony was hearsay. Defendant does not explain how this advice was deficient. Defendant also argues that defense counsel "failed to raise the witnesses credibility on the suspect descriptions," but it is unclear what defendant is arguing here. It is well settled that an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 641; 588 NW2d 480 (1998). Additionally, both of the witnesses in question were listed on the original complaints and their statements were included in police reports. Defense counsel cross-examined both witnesses and elicited testimony to discredit their identifications of defendant. Defendant has failed to explain how defense counsel's performance was deficient regarding these witnesses.

Defendant next argues that defense counsel "failed to question the pictures in cuffs" shown to the jury. This argument is also without merit. First, defendant fails to make an argument on this point: his assertion of error is contained in a single sentence. Therefore, this argument fails. See *Kelly*, 231 Mich App at 641. Additionally, even if defendant had made an argument on this point, defense counsel objected to the admission of this photograph, and the trial court overruled his objection. After the trial court ruled that the photograph was admissible, it became a sound trial strategy for defense counsel not to call attention to the handcuffs by questioning witnesses about them. We do not question matters of trial strategy, see *Payne*, 285 Mich App at 190, and counsel is not ineffective simply because his trial strategy failed, see *Stewart*, 219 Mich App at 42. Defendant has failed to show that his counsel's performance was deficient regarding the photograph.

Finally, defendant argues that defense counsel failed to obtain the surveillance video from the Marathon robbery. Defendant argues that because he could not view this video in advance, he was denied a fair trial. This argument is without merit. First, there is no record

evidence to support defendant's argument that his trial counsel did not receive the video. Defense counsel did not object to the introduction of the video on grounds of unfair surprise, and the video was referenced in the police reports. The record evidence shows that defense counsel received the video in advance of trial and was aware of its contents. Defendant has failed to show that his counsel was deficient for failing to request the video. Defendant also seems to argue that he should have been granted an opportunity to watch the video before trial, but cites no law in support of this cursory argument. Therefore, this argument also fails. See *Kelly*, 231 Mich App at 641.

Moreover, for each of these arguments, defendant has failed to explain how any of the above errors would have prejudiced him. Again, it is well settled that an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 641. Defendant must satisfy both prongs of the ineffective assistance of counsel test, but he has not even attempted to support the second prong for any of his arguments.

Affirmed.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly