*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 19, 2019

Plaintiff-Appellee,

v

No. 344143
Macomb Circuit Court
LC No. 2017-004528-FC

JOHN EARL PIERCE,

Defendant-Appellant.

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, and the trial court sentenced him as a fourth habitual offender to 25 to 40 years' imprisonment. Defendant contends that the victim's in-court identification was "tainted" by an overly suggestive pretrial identification procedure, that the court should have declared a mistrial based on a police officer's reference to defendant's "booking" photo from an unrelated case, and that he is entitled to resentencing without a habitual offender enhancement as the prosecutor did not properly serve notice. We discern no error and affirm.

## I. BACKGROUND

A man wearing a black face mask, black leather jacket, and black hood robbed at gunpoint the office at a Public Storage facility at approximately 4:50 p.m. on October 30, 2017. The manager, Ashley McGee, testified that the robber had "bright blue" eyes and was approximately 5'9. Investigating officers found a security camera at a nearby business that captured the Public Storage parking lot. Around the time of the robbery, a silver sedan pulled up, a man exited from the passenger side door, and walked toward the office. Four minutes later, the man ran back to the car, entered, and the car sped away. The man depicted in the footage was not wearing the mask, but his face was not clear either. McGee indicated that the man in the footage was dressed like the man who robbed her.

The investigating officer disseminated still shots of the man and the silver vehicle from the security footage. Another officer recognized the man and vehicle from a traffic stop five days before the robbery and was able to identify the individual by name as defendant. From

-1-

there, the investigating officer tracked down the vehicle owner, Gail Wodarski, who confirmed that her cousin (defendant) and his girlfriend, Misty Burgess, were using her vehicle both at the time of the traffic stop and the robbery. Wordarski identified her vehicle in the security footage as it was missing the bumper and had replacement rims. She also identified the man in the footage as defendant as she recognized his walk and clothing.

After his arrest, defendant expressed desire to stop Burgess's prosecution. Defendant indicated that "he had picked up a hooker" that day and the hooker was "driving the car," not Burgess.

## II. IDENTIFICATION PROCEDURE

Defendant first argues that the trial court should have suppressed McGee's in-court identification of him. The in-court identification was tainted by unduly suggestive pretrial identification procedures, defendant asserts, and McGee's identification lacked an independent basis. Defendant further contends that his trial counsel was ineffective for failing to move to suppress the identification.

On the day of defendant's and Burgess's preliminary examinations, the prosecutor met with McGee at the courthouse. After instructing McGee about preliminary examination procedures, the prosecutor asked McGee to describe the clothing worn by the robber. The prosecutor then showed McGee a still shot from the security footage. McGee indicated that the man in the photo was wearing clothes similar to the robber's but that the person's face in the photo was too unclear to identify. The prosecutor did not conduct a photographic lineup or show McGee any other photos. McGee later noted that the officer did *not* identify the person in the photograph as defendant.

McGee was present in the courtroom gallery while a group of criminal defendants waited in the jury box for their matters to be heard. McGee observed defendant sitting at the defense table with his attorney and heard him waive his preliminary examination. McGee was then aware that defendant was the accused in her robbery—she knew the names of the two suspects and heard defendant's name announced in court. McGee remained in the courtroom after deputies directed defendant to a seat in the first row of the jury box. McGee then testified at Burgess's preliminary examination. McGee was required to "walk[] past [defendant] to sit down on the stand," looked "[q]uickly" at defendant's face, and recognized him as the robber. McGee did not comment on her recognition of defendant at the time. Four months later, McGee identified defendant as the robber at his trial. McGee asserted that defendant's "bluish" eyes gave him away, and she disagreed with defendant's contradictory description of his eyes as hazel.

Our review of defendant's challenge to the identification procedure is limited to plain error affecting defendant's substantial rights as he failed to object below. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *People v Solloway*, 316 Mich App 174, 187-188; 891 NW2d 255 (2016). Because no factual

record was created in regard to defendant's claims of ineffective assistance of counsel, our review is limited to mistakes apparent on the record. *Id*.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). "The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002), superseded by statute in part on other grounds as stated in *People v Rodriguez*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 338914); slip op at 3.

> When examining the totality of the circumstances, relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of a prior description, the witness'[s] level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation. [*People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998).]

"Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do." *Perry v New Hampshire*, 565 US 228, 244; 132 S Ct 716; 181 L Ed 2d 694 (2012). However, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id*. at 245. "[A]n improper suggestion often arises when the witness . . . either is told or believes that the police have apprehended the right person," or "when the witness is shown only one person or a group in which one person is singled out in some way"; in those instances, the witness "is tempted to presume that he is the person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (cleaned up).[1] "Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014).

"The fact that the prior confrontation occurred during the preliminary examination, as opposed to a pretrial lineup or showup, does not necessarily mean that it cannot be considered unduly suggestive." *Colon*, 233 Mich App at 304. However, "[s]imply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *Id*. If the pretrial identification procedure was not unduly suggestive, "no independent basis for the identification need be established." *People v Syakovich*, 182 Mich App 85, 89; 452 NW2d 211 (1989). If the pretrial identification procedure was impermissibly suggestive, an "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *People v*

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

*Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). This Court weighs the following factors when determining whether there is an independent basis for the admission of an in-court identification:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

It was not unduly suggestive for the prosecutor to show McGee a still photograph from the security camera footage on the day of the preliminary examination. The prosecutor did not inform McGee that the photograph was of defendant and provided no details about the source of the image. McGee testified that she could not see the individual's face in the photograph, only his clothing. The clothing of the photographed individual appeared to be the clothing worn by the robber. Because of the lack of clarity of the image, McGee asserted that she did not identify defendant using that photograph. As such, McGee's viewing of the photograph either was not truly a pretrial identification procedure or was not so unduly suggestive as to lead to a substantial likelihood of misidentification.

McGee's observation of defendant while she testified at Burgess's preliminary examination also was not unduly suggestive. McGee did not openly identify defendant at that time and her viewing of defendant was merely incidental to providing testimony at Burgess's hearing. McGee's required presence during that hearing was not part of a pretrial identification procedure. Again, "[t]he fallibility of eyewitness evidence does not, without the taint of improper *state conduct*, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Perry*, 565 US at 245 (emphasis added). There was no improper state conduct that tainted McGee's identification of defendant at Burgess's preliminary exam.

Even if this was a pretrial identification procedure and was unduly suggestive, McGee's in-court identification would still be admissible because it was supported by a sufficient independent basis. McGee observed the robber for approximately two minutes within arm's reach in the daylight. Although defendant had noticeable tattoos on his hands that McGee did not describe, McGee testified that she only really looked at the robber's eyes. McGee described the robber's eyes as "bright blue," but noted that defendant's eyes were only "bluish." Moreover, defendant is 6'2 while McGee described the robber as 5'9. McGee stated at trial that she was not confident about her initial assessment of the robber's height and described that he was a "taller" man. Six months elapsed between the robbery and the identification and McGee did not know defendant personally. These facts alone do not invalidate McGee's independent basis for identifying defendant as she had ample opportunity to view the perpetrator during the robbery. Ultimately, where a witness does not identify a defendant in a pretrial lineup, the witness's in-court identification of a defendant is "a credibility issue that [is] properly before the

jury to determine." *People v Barclay*, 208 Mich App 670, 676; 528 NW2d 842 (1995). The discrepancies noted by defendant do not diminish the validity of the independent basis supporting McGee's identification of defendant. Rather, they pertain to the reliability of the identification. As observed by the United States Supreme Court, "the jury, not the judge, traditionally determines the reliability of evidence." *Perry*, 565 US at 245.

Defense counsel was not ineffective for failing to move to suppress McGee's in-court identification. As the identification was admissible and not tainted by unduly suggestive pretrial identification procedures, any objection would have been unsupportable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## III. MOTION FOR MISTRIAL

Defendant next contends that the trial court erred when it denied his motion for a mistrial. During trial, Detective Gregory Booton testified that he obtained a copy of security camera footage from the time of the robbery, showing a man exit the passenger side of a silver automobile and running back to the vehicle approximately four minutes later. Detective Booton described that he "disseminated" still shots from the recording and that Sergeant Ahmad Haidar identified the man in the photographs as defendant and the automobile as one that he had previously stopped. Detective Booton then found a photograph of defendant to compare with the photograph of the man in the security footage. During trial, the prosecutor asked Detective Booton "what date" the photograph was taken, and the detective replied that it was a "booking photo" of defendant "from September 13, 2016."

Defense counsel moved to strike the word "booking" and also asked for a jury instruction to disregard the reference. The trial court granted the motion and instructed the jury accordingly. Defense counsel subsequently moved for a mistrial based on the prosecution's "solicitation of an extraordinarily prejudicial statement" that included the word "booking." The court denied the motion because it did "not believe that" the use of the word "booking" was "so unduly prejudicial that a mistrial [was] warranted." Defendant maintains that a curative instruction was insufficient to remedy the prejudice.

"The trial court's grant or denial of a mistrial will not be reversed on appeal in the absence of an abuse of discretion. A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (cleaned up). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

At the outset, defendant argues that the trial court should have excluded Detective Booton's reference to the "booking" photograph, as it constituted inadmissible other-acts evidence under MRE 404(b)(1). However, the court did exclude the evidence by granting defendant's motion to strike. We can grant no further relief.

Defendant also takes issue with Detective Booton's testimony that he spoke with defendant "at a police station for hours on matters not related to the case at hand," and that

Detective Booton discussed "his lengthy conversation with [defendant] at a police station" during trial. However, defendant conflates the testimony of Detective Booton with the testimony of Sergeant Haidar, who testified that he encountered defendant in October 2018, during a "traffic stop," and that he subsequently spoke with defendant for approximately two or three hours "[a]t the 12th Precinct." Defendant does not specifically address why Sergeant Haidar's testimony would be inadmissible, or how Sergeant Haidar's testimony required the trial court to grant a mistrial. A party "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016) (cleaned up). This challenge is therefore abandoned.

Defendant asserts that the trial court erred when it denied his mistrial motion because the curative instruction did not cure the prejudice caused by the "booking" remark and may have amplified the prejudice. However, "[j]urors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). Moreover, as a general rule, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228. Detective Booton's isolated stray remark, in and of itself, did not warrant a mistrial.

Defendant also relies upon *People v Page*, 41 Mich App 99, 101-102; 199 NW2d 669 (1972), in which this Court held that a law enforcement officer's unresponsive testimony that the defendant was associated with narcotics trafficking provided a sufficient basis to declare a mistrial because police officers normally command the respect of the jury, the remark was unresponsive and irrelevant, the association of the defendant with drug traffic was inflammatory, and there was a "less than strong case against the defendant." Unlike in *Page*, there was overwhelming evidence of defendant's guilt in this case. The prosecution provided the jury with a detailed outline of the investigatory steps that led to defendant's identification as the robber. Moreover, two days after his arrest, defendant essentially admitted his guilt to Detective Booton while providing an alibi for Burgess.

## IV. SENTENCE ENHANCEMENT

Finally, defendant contends that he is entitled to resentencing without a habitual offender enhancement as the prosecution failed to properly notify him of its intent to seek enhancement. Defendant failed to preserve his challenge by raising it below and our review is limited to plain error. *Carines*, 460 Mich at 763-764.

MCL 769.13 provides, in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Additionally, MCR 6.112(F) provides:

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.

"Unambiguous language in a statute or court rule is enforced as written." *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018). However, "[t]he purpose of the notice requirement is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense." *Id.* at 543 (cleaned up). "The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual offender notification." *Id.* at 543-544.[2]

In December 2017, the prosecution filed a notice of intent to enhance defendant's sentence as a fourth habitual offender, but did not file a proof of service. Nonetheless, during defendant's January 2018 arraignment, defense counsel acknowledged "receipt of the [felony] information and the witness list." The trial court then asked defense counsel if he and the prosecutor had spoken "about a potential resolution," and the prosecutor replied, "Yes, but we will probably not reach one. It's a 25-year mandatory." In other words, the prosecutor explained that a plea agreement was unlikely given defendant's mandatory minimum sentence, as a fourth habitual offender pursuant to MCL 769.12, of 25 years' imprisonment. During defendant's May 2018 sentencing hearing, defense counsel acknowledged that the trial court was required to impose a mandatory minimum sentence of 25 years' imprisonment because the prosecution "had

---

[2] Defendant acknowledges that *Head* is binding precedent pursuant to MCR 7.215(J)(1), but argues that *Head* was wrongly decided. Defendant relies on the Michigan Supreme Court's order to hear arguments on an application for leave to appeal regarding whether the harmless error test applies to violations of MCL 769.13's notice requirements. The Supreme Court subsequently denied leave in that case. *People v Straughter*, ___ Mich ___; 930 NW2d 384 (2019). The subject legal proposition in *Head* therefore remains good law.

enhanced" defendant's sentence "for crimes against a person" and this was defendant's fourth offense. Additionally, defendant asked the trial court to not "exceed the 25 years."

Even though the prosecution failed to file a proof of service, defendant was apprised of the prosecutor's intent to enhance his sentence as early as his arraignment. Therefore, the failure to file a proof of service was harmless error.

We affirm.


/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher