*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 15, 2025
3:24 PM

v

No. 363760
Delta Circuit Court
LC No. 21-010418-FH

MANITOUBANI WANDAHSEGA,

Defendant-Appellant.

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of first-degree retail fraud, MCL 750.356c. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 46 months to 20 years' imprisonment. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a September 2020 theft from the Walmart in Delta County's City of Escanaba. While in the store, defendant filled his shopping cart with, what was later determined to be, $781 worth of merchandise and then he pushed the cart toward the store's exit without stopping to actually purchase the items. A Walmart employee approached defendant as he was on his way to leave the store and questioned him about the merchandise. Defendant, not responding, abandoned the cart and its contents, with the exception of a shoe and hat, and ran toward a vehicle in the parking lot. On his way out, defendant did not stop to pay for the shoe or the hat.

By the time officers from the Escanaba Department of Public Safety and the Hannahville Tribal Community Police Department arrived on the scene, defendant was gone. But, law enforcement later connected defendant to the retail theft using surveillance images from the store and vehicle registration information for a truck seen on the video.

At the preliminary examination, the Walmart employee, who saw defendant with his cart of goods, testified that the suspect was male, "Native, wearing a grey shirt, black vest, blue jeans, and had a tattoo on the underside of his arm." The employee acknowledged that the suspect was wearing a surgical mask during the retail theft, but he still identified the culprit as defendant.

-1-

Additionally, police officers testified that the truck from the video was connected to defendant, and one of the officers testified that the defendant had admitted to pushing the cart of unpaid merchandise toward the door and taking a shoe and hat from the store. After hearing this testimony, the district court bound defendant over to the circuit court for trial.

At trial in Delta County Circuit Court, the Walmart employee again identified defendant as the suspect. Defense counsel did not object to this second identification, but he did cross-examine the employee and challenged the credibility of the employee's identification during argument at the close of trial.

Following trial, a juror informed the trial court that she was not a resident of Delta County at the time of trial. Upon this discovery, defendant did not move for a new trial, and the trial court proceeded with sentencing. Approximately nine months after sentencing, defendant then moved for a new trial or an evidentiary hearing, or to correct an invalid sentence, and alleged several errors by the trial court. The court denied the motion, but it did reduce defendant's prior record variable (PRV) score. However, that change did not affect the guidelines minimum sentencing range, and the trial court found that none of the alleged errors raised by defendant entitled him to resentencing.

This appeal followed.[1]

## II. IN-COURT IDENTIFICATION

On appeal, defendant first argues that the Walmart employee's identification of defendant at the preliminary examination was on the basis of impermissibly suggestive procedures. Thus, defendant argues, the employee's subsequent identification at trial should have been excluded. Alternatively, defendant argues that defense counsel's failure to object to the employee's identification at trial constituted ineffective assistance. We disagree with both contentions.

## A. PRESERVATION AND STANDARDS OF REVIEW

To preserve a challenge to a witness's in-court identification, a defendant must object at trial. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001). Defendant did not object to the employee's identification at the preliminary examination or at trial, leaving this issue unpreserved. Thus, we review this issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under plain-error review, the defendant bears the burden of persuasion and, to obtain appellate relief, must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *Id.* To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court

---

[1] Defendant also filed a motion to remand with this Court, asserting that the trial court erred by admitting the Walmart employee's identification at trial and that defense counsel was ineffective for failure to object. We denied the motion "for failure to persuade the Court of the necessity of a remand at this time." *People v Wandahsega*, unpublished order of the Court of Appeals, entered April 8, 2024 (Docket No. 363760). Having further considered the merits of this issue, we remain unpersuaded that a remand is necessary.

proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id.* Clear error exists if the reviewing court "is left with a definite and firm conviction that the trial court made a mistake." *People v Abcumby-Blair*, 335 Mich App 210, 227-228; 966 NW2d 437 (2020) (quotation marks and citation omitted). Because the trial court did not hold an evidentiary hearing before issuing a ruling on defendant's motion, our review is limited to mistakes apparent from the record. *Heft*, 299 Mich App at 80.

## B. LAW AND ANALYSIS

"Due process protects criminal defendants against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020) (quotation marks and citation omitted). "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *Id.* "The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Murphy (On Remand)*, 282 Mich App 571, 584; 766 NW2d 303 (2009). However, "[s]imply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). "If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." *Id.*

Defendant's identification contentions arguably are foreclosed by *People v Barclay*, 208 Mich App 670; 528 NW2d 842 (1995). In *Barclay*, a witness first identified the defendant as the perpetrator at a preliminary examination, and we held that there was no need to establish an independent basis for the witness's subsequent in-court identification of the defendant at trial. *Id.* at 675-676. We reasoned that the identification at the preliminary examination was not "tainted by improper procedure" or "unduly suggestive" so as to require a showing of an independent basis. *Id.* In addition, we also held that the witness's failure to identify the defendant in a pretrial lineup before the in-court identification "was a credibility issue that was properly before the jury to determine." *Id.* at 676. As applied here, the fact that the Walmart employee first identified defendant as the attempted thief at the preliminary examination does not impermissibly taint his subsequent identification of defendant at trial. That is, under *Barclay*, the employee's in-court identification of defendant at trial was admissible without a showing that the identification was supported by an independent basis, given that the employee previously had identified defendant at the preliminary examination. See *id.*

Defendant does not discuss or distinguish *Barclay*, but instead relies upon *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). In *Posey*, a witness to an assault identified the defendant as the perpetrator for the first time at trial, approximately one year after the crime occurred. *Id*. at 329. Our Supreme Court held that "first-time-in-court" identifications of a defendant at trial are subject to the same reliability analysis as identifications tainted by unduly suggestive pretrial identification procedures. *Id*. at 337-340. In other words, when a witness identifies a defendant for the first time at trial, doing so only is permissible when there is an independent basis for the identification. See *id*. at 339-340. Defendant here reasons that, under the dictates of *Posey*, because a first-time-in-court identification of a perpetrator at trial is tainted, it follows that the Walmart employee's first-time identification of defendant at the preliminary examination similarly is tainted. We disagree.

*Posey* specifically considered and distinguished *Barclay* and its preliminary examination identification, stating as follows:

> In *Barclay*, the Court of Appeals held that there was no need to establish an independent basis for an in-court identification when an eyewitness did not identify the defendant during a pretrial corporeal lineup but then identified the defendant for the first time in the courtroom. However, the key distinction between this case and *Barclay* is that the witness's first identification of the defendant in *Barclay* occurred at a pretrial examination in the courtroom, not at trial. . . . [*Id*. at 334 (citation and footnote omitted).]

In other words, *Posey* arguably is limited to cases in which the initial identification occurs at trial, not when the initial identification occurs at the preliminary examination. See *id*.[2] In the instant case, the record reflects that the Walmart employee first identified defendant at his preliminary examination before identifying defendant again at trial. Because the employee's first identification occurred at the preliminary examination, the trial court did not need to establish an independent basis for the employee's in-court identification to be admissible and did not plainly err by failing to do so. See *id*. at 334, 336-337.[3]

---

[2] Admittedly, *Posey* contains some seemingly conflicting language regarding *Barclay*. On one hand, *Posey* stated that "[w]hether *Barclay* was correctly decided is not at issue in this case." *Id*. at 334 n 3. On the other hand, *Posey* also stated that "*Barclay* [is] only binding when there is some pretrial identification by the witness presenting identification evidence that was not improperly facilitated by a state actor." *Id*. at 337. To the extent that *Barclay* does not control the issue in this case, defendant nonetheless is not entitled to relief because, for the reasons explained *infra*, he cannot establish prejudice, nor can he establish that any error was "plain."

[3] Regardless, even if *Posey* governs the general set of facts before us, because defendant's trial occurred before *Posey* was decided, he cannot show that any error was "plain" under *Posey*, nor can he show that defense counsel was ineffective for failure to object to the Walmart employee's identification testimony on the basis of *Posey*. See *Posey*, 512 Mich at 362 (CAVANAGH, J., *concurring in part and concurring in the judgment*) ("I would affirm because, under the state of

In any event, even if the trial court plainly erred by admitting the Walmart employee's identification testimony at trial, defendant does not show that the improper identification affected the outcome of the proceedings. Surveillance footage also captured the image of the suspect and his distinctive tattoos. The vehicle that the suspect used in the retail theft was connected to defendant, and there was testimony from a police officer that defendant admitted that he was the individual the employee described pushing a cart full of unpaid merchandise toward the door. The police officer also testified that while defendant denied "stealing," defendant admitted that he removed a hat and a shoe from Walmart without paying. These facts, taken together, are strong evidence of defendant's guilt regardless of the employee's identification testimony. Thus, defendant fails to establish prejudice. See *Carines*, 460 Mich at 763.

Turning to defendant's ineffective assistance of counsel claim, it too fails. "The right to counsel guaranteed by the United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). We presume that counsel was effective, and defendant carries a heavy burden to overcome this presumption. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

Defendant has not established that defense counsel was ineffective for failing to object to the Walmart employee's in-court identification. As previously discussed, the employee's in-court identification was properly admitted, at least under the law that existed before *Posey* which, as stated *supra* in footnote three, was decided after defendant's conviction. Thus, any objection by defense counsel, at the time of trial, would have been futile, and defense counsel cannot be deemed ineffective because he failed to raise a futile or meritless objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).[4] Alternatively, for the reasons previously explained, defendant cannot show prejudice because the evidence against him was substantial, and there is not a reasonable probability that the identification testimony affected the outcome of trial. See *Randolph*, 502 Mich at 9.

## III. JUROR QUALIFICATIONS

---

the law when the trial occurred, the error in admitting Terrence Byrd's identification was not 'plain' and trial counsel did not perform deficiently by failing to object to this testimony.").

[4] We also note that defense counsel cross-examined the employee regarding his testimony and identification of defendant and challenged the credibility of his identifications at the preliminary examination and at trial.

Defendant next argues that the presence of a juror at his Delta County trial who was not a resident of the county on his jury violated his Sixth Amendment rights and constitutes a structural error requiring automatic reversal. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

MCL 600.1354(1) provides that a defendant must raise a "timely objection" to juror noncompliance with statutory qualifications. Here, while defendant did move for a new trial on the basis of the juror's residency in June 2023, that motion was filed over nine months after he learned of the juror's residency issue. Arguably, therefore, this issue is unpreserved for review. Nonetheless, because defendant did eventually move for a new trial, we will treat the issue as preserved.

"A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). "An abuse of discretion occurs only when the trial court chooses an outcome falling outside the principled range of outcomes." *Id*. (cleaned up).

## B. LAW AND ANALYSIS

A criminal defendant's right to a jury composed of residents of the county in which the crime was committed is grounded in statute. MCL 600.1307a provides the requisite qualifications for an individual to serve as a juror, including the requirement that an individual "[b]e a citizen of the United States, 18 years of age or older, and a resident in the county for which the person is selected . . . ." MCL 600.1307a(1)(a).[5] While MCL 600.1307a addresses juror qualifications, MCL 600.1354(1) addresses when relief is warranted on the basis of a disqualified juror:

> Failure to comply with the provisions of this chapter shall not be grounds for a continuance nor shall it affect the validity of a jury verdict unless the party requesting the continuance or claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial. . . .

While defendant incidentally argues that the juror's presence on the jury violated MCL 600.1307a(1)(a), he focuses his quest for relief on the contention that the juror's presence violated his Sixth Amendment rights. In particular, defendant relies on the Sixth Amendment's "Vicinage Clause," which guarantees criminal defendants the right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law[.]" US Const, Am VI. However, the United States Supreme Court has not decided whether the Fourteenth Amendment incorporated the Vicinage Clause to the states. *Stevenson v Lewis*, 384 F3d 1069, 1071 (CA 6, 2004). Further, we have held that the Vicinage Clause applies only to prosecutions in federal courts, not state courts. *People v Gayheart*, 285

---

[5] MCL 600.1307a(1)(a) recently was amended, 2023 PA 308, effective December 14, 2023, but the statute only was changed to replace "person" with "individual."

Mich App 202, 225-226; 776 NW2d 330 (2009). Therefore, to the extent that defendant relies upon the federal Vicinage Clause, his argument fails.

Moreover, with regard to the state constitution, we note that while the Michigan Constitution of 1835 contained a vicinage requirement, the Michigan Constitution of 1850 omitted the words "of the vicinage" from the listed qualifications for jurors in a criminal case, and the omission carried over to the subsequent Michigan Constitution of 1908 and the Constitution of 1963. *People v Houthoofd*, 487 Mich 568, 588; 790 NW2d 315 (2010). Consequently, our Supreme Court has explained that the vicinage requirement, as it exists today in Michigan, arises from statute. See *People v McBurrows*, 504 Mich 308, 321-322; 934 NW2d 748 (2019). Accordingly, Michigan caselaw does not support defendant's assertion that he had a constitutional right to a jury composed of jurors of the county in which the crime occurred.

Defendant also contends that the juror's presence constituted a structural error warranting automatic reversal. In particular, defendant compares this case to *People v Yarbrough*, 511 Mich 252; 999 NW2d 372 (2023), in which our Supreme Court explained that application of the harmless-error standard in the context of peremptory challenges was unworkable because of the difficulty, or impossibility, of determining prejudice in such instances. *Id*. at 270. The Court thus held that the erroneous denial of a defendant's peremptory challenges constitutes a structural error that warrants automatic reversal. *Id*. at 272. Importantly, however, the Court distinguished between erroneous denial of a peremptory challenge, as occurred in that case, and a hypothetical challenge to a juror for cause, as occurred here. *Id*. at 265 n 2. Consequently, *Yarbrough* does not apply here.

*Miller* is the controlling case here. In *Miller*, our Supreme Court explained that a juror who previously was convicted of a felony but nonetheless served on the jury, contrary to MCL 600.1307a(1)(e), did not entitle the defendant to relief under MCL 600.1354(1). *Miller*, 482 Mich at 552. The Court explained that under MCL 600.1354(1), the defendant has the burden of showing "actual prejudice" arising from the fact that a disqualified juror served on the jury, which the defendant failed to do:

> Defendant has not offered any evidence to demonstrate that he was prejudiced by the convicted felon's presence on his jury. That is, defendant has offered no evidence to establish that the juror was partial. The juror testified that his status as a felon did not affect his deliberations and that he did not share this information with the other jurors or try to improperly persuade the rest of the jurors in any way. There is simply no evidence that this juror improperly affected any other jurors. . . . [*Id*. at 553-554 (footnotes omitted).]

Similarly, in the instant matter, defendant fails to demonstrate that the juror's presence on the jury warrants reversal of his conviction. It is true that the juror sat in Delta County despite being a resident of neighboring Dickinson County at the time of trial, thereby violating MCL 600.1307a(1)(a). Thus, the juror theoretically was excusable for cause because she was disqualified from serving on the jury. However, to invalidate the jury's verdict under MCL 600.1354(1), defendant was required to raise a timely objection to the juror's residency and demonstrate actual prejudice. See MCL 600.1354(1). As noted, defendant arguably failed to make a timely objection. Regardless, defendant did not establish actual prejudice. During voir dire, the

prosecution questioned the juror at issue about the use of common sense in determining what had happened in a situation and her ability to use common sense as a juror. The juror's responses to the prosecution's questions do not indicate that she was not fair or impartial. Nor does the record otherwise suggest that the juror was not fair or impartial. Moreover, the noncompliance with MCL 600.1354(1) amounted to a single juror who moved outside the county after filling out her juror questionnaire and later informed the court of her updated address. This noncompliance can hardly be considered substantial as dictated by MCL 600.1354(1). See *id*.

Therefore, because defendant did not satisfy the "actual prejudice" requirement of MCL 600.1354(1), the trial court did not abuse its discretion by denying defendant's motion for a new trial. See *Miller*, 482 Mich at 544.

## IV. PRV 5 SCORING

Defendant argues that the trial court erred by assessing 10 points for PRV 5 because he only had two scoreable misdemeanor convictions in his criminal history. Defendant also argues that the trial court improperly calculated his sentencing guidelines range because of its incorrect scoring for PRV 5. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). "Under the sentencing guidelines, the circuit court's factual determinations . . . must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).

## B. LAW AND ANALYSIS

PRV 5 addresses a criminal defendant's "prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1). Fifteen points are assessed for PRV 5 when "[t]he offender has 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1)(b). Ten points are assessed for PRV 5 when "[t]he offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1)(c). A trial court should consider a prior misdemeanor conviction or prior misdemeanor juvenile adjudication "if it is an offense against a person or property, a controlled substance offense, or a weapon offense," MCL 777.55(2)(a), or if it is an offense "for operating or attempting to operate a vehicle, vessel, ORV, snowmobile, aircraft, or locomotive while under the influence of or impaired by alcohol, a controlled substance, or a combination of alcohol and a controlled substance," MCL 777.55(2)(b).

Here, defendant's presentence investigation report (PSIR) calculated his PRV 5 score at 15 points and his total PRV score at 55 points, placing him at PRV Level E. The trial court sentenced him at the top of the guidelines range to 46 months to 20 years' imprisonment. In response to his motion to correct an invalid sentence, the trial court agreed that it erroneously assessed 15 points

for PRV 5 when the facts only supported a score of 10 points. Specifically, the trial court agreed that three of his misdemeanor convictions should not have been scored for purposes of PRV 5. However, even without these convictions, defendant's criminal history included three scoreable misdemeanor convictions. Defendant does not give any explanation or argument, nor can we find any reason, as to why these remaining three misdemeanor convictions should not have been scored by the trial court. Accordingly, the trial court did not err by scoring 10 points for PRV 5 in light of defendant's three prior scoreable misdemeanor convictions, see MCL 777.55(1)(c), and defendant is not entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

## V. HABITUAL-OFFENDER NOTICE

Defendant next argues that the trial court erred by sentencing him as a fourth-offense habitual offender because the prosecution failed to notify him of its intent to seek a habitual offender enhancement and failed to file a proof of service of that fact. We disagree.

## A. STANDARD OF REVIEW

We review the question whether the prosecution failed to file a habitual-offender notice and proof of service "de novo as a question of law because it involves the interpretation and application of statutory provisions and court rules." *Head*, 323 Mich App at 542.

## B. LAW AND ANALYSIS

MCL 769.13 provides, in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Likewise, at the time relevant to this case, MCR 6.112(F) provided:

> A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence

enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.[6]

"The purpose of the notice requirement is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense." *People v Burkett*, 337 Mich App 631, 644; 976 NW2d 864 (2021) (quotation marks and citation omitted). "The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual-offender notification." *Head*, 323 Mich App at 543-544. Further, providing "charging documents" to the defendant is sufficient to satisfy the statutory and court-rule notice requirements. See *id*. at 544 ("Although defendant vaguely asserts that the habitual-offender notice was not properly 'served' on defendant or defense counsel, defendant does not specify what he means by this. Defendant does not claim that he and defense counsel never received a copy of the charging documents.").

Here, the district court conducted the preliminary examination on March 11, 2021, and bound defendant over on the first-degree retail-fraud charge. On March 15, 2021, the prosecution filed a felony information with the trial court, indicating its intent to charge defendant with first-degree retail fraud as a fourth-offense habitual offender. At the June 14, 2021 arraignment and pretrial hearing, defendant and defense counsel expressly stated that they received the felony information and reviewed it before the hearing. Moreover, the prosecution stated at that hearing that it would proceed against defendant "as a fourth habitual" if he did not accept a plea offer. Thus, while defendant now argues that the prosecution did not notify him of a general habitual-offender enhancement and failed to file a proof of service of that fact, the record clearly indicates otherwise. The record shows defendant received the felony information, thereby giving him actual notice of the enhancement at the beginning of the trial-court proceedings. Further, to the extent that the record does not reflect the filing of a proof of service, defendant has not shown that he was prejudiced by the failure to file it. Consequently, defendant is not entitled to relief. See *id*. at 544-545.

## VI. PROPORTIONALITY

Defendant next argues that the trial court abused its discretion by sentencing him to 46 months to 20 years' imprisonment because his 46-month minimum sentence was disproportionate to the offense and disproportionate in light of his mitigating factors. We again disagree.

### A. STANDARD OF REVIEW

---

[6] MCR 6.112(F) was amended after defendant's trial to additionally provide that "[t]he notice must contain, if applicable, any mandatory minimum sentence required by law as a result of the sentence enhancement." That amendment is not relevant here.

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citation omitted). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality." *Id*. (cleaned up). "[T]he principle of proportionality simply requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 501 (quotation marks and citations omitted). Moreover, we review constitutional challenges de novo. See *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018).

## B. LAW AND ANALYSIS

Michigan's sentencing guidelines are advisory, but trial courts still must consult the guidelines and consider them during sentencing. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). When appellate courts review a within-guidelines sentence for proportionality, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Posey*, 512 Mich at 359. "[A] trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender, in an effort to balance society's need for protection against its interest in rehabilitation of the offender." *People v Sabin (On Second Remand)*, 242 Mich App 656, 661; 620 NW2d 19 (2000). Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

Defendant has not overcome the presumption that his within-guidelines sentence is reasonable and proportionate. See *Posey*, 512 Mich at 359. While defendant left the store with only a single shoe and a hat for which he did not pay, the evidence presented at trial reflects that he attempted to steal unpaid merchandise valued at $781 from Walmart by placing that unpaid merchandise in an empty child car seat box and by removing security devices from electronics he had not purchased. Further, in sentencing defendant, the trial court considered his extensive criminal history, including numerous theft-related offenses, and his previous prison and jail terms for those offenses. The trial court explained that it considered defendant's potential for rehabilitation, but it emphasized that defendant had numerous previous unsuccessful opportunities for rehabilitation. Reflecting on defendant's criminal history, the trial court noted that, essentially, "[t]he only time that it seems you're not committing some sort of crime, especially theft, is when you're in prison or in jail . . . ." Moreover, the trial court considered defendant's progress since his arrest, such as earning his GED while incarcerated, beginning substance-abuse and mental-health treatment, volunteering with his tribal community, and complying with his bond conditions.

However, in light of defendant's criminal history and lack of rehabilitation,[7] the trial court determined that a minimum sentence of 46 months was reasonable.

The record clearly demonstrates that the trial court appropriately tailored a sentence to balance defendant's recent progress with his extensive history of theft-related offenses, his unsuccessful attempts at probation and parole, and his unlikely potential for rehabilitation. Thus, the 46-month minimum sentence was not unreasonable, disproportionate, or an abuse of discretion. See *Posey*, 512 Mich at 359.

Defendant also argues that his sentence was disproportionate because "the range was too wide," leaving the trial court with "no real guidance" in sentencing him and granting the court unfettered discretion. However, the 7-to-46-month range was a result of defendant's criminal history, his status as a fourth-offense habitual offender, and the nature of the offense. See MCL 777.66. "Under the Michigan Constitution, the Legislature is vested with the authority to 'provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences.' " *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 2, quoting Const 1963, art 4, § 45. "Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Accordingly, the trial court did not abuse its discretion by imposing a sentence within the range set forth by the Legislature for first-degree retail fraud.

VII. TETHER FEES

Defendant finally argues that the trial court erred by imposing $1,365 in tether fees because the relevant statute limited the court to imposing $60 in tether fees each month. We disagree.

A. PRESERVATION AND STANDARD OF REVIEW

"A criminal defendant preserves an issue concerning the imposition of costs, fines, and assessments by objecting in the lower court." *People v Godfrey*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361770); slip op at 2. The trial court specifically stated at sentencing that it would assess $1,365 in tether fees, but defendant did not object to these fees at sentencing or after the judgment of sentence was entered. Therefore, this issue is unpreserved, and we review it for plain error affecting substantial rights. See *Carines*, 460 Mich at 763.

B. LAW AND ANALYSIS

"In Michigan, a court cannot impose penalties or costs in a criminal case unless specifically authorized by statute." *In re Killich*, 319 Mich App 331, 336; 900 NW2d 692 (2017). Pursuant to MCL 769.1k, a trial court may impose fines, costs, and assessments at sentencing, and under MCL 769.1k(2), "the court may order the defendant to pay any additional costs incurred in compelling the defendant's appearance." We have previously addressed whether MCL 769.1k(2)

---

[7] The defendant's presentence investigation report reflects 18 offenses as an adult.

-12-

permits a trial court to impose fees related to a criminal defendant's GPS tether. See *Godfrey*, ___ Mich App at ___; slip op at 2. As part of our analysis in *Godfrey*, we explained:

> A GPS tether device is a tool used by courts to remotely surveil defendants. Given this capability, a tether may also secure a criminal defendant's appearance at later court hearings. Because it is a device that can be used to compel a defendant's appearance, requiring a defendant to bear the cost of a GPS tether is statutorily permissible under MCL 769.1k(2). That said, there must also be evidence demonstrating that the GPS tether was imposed for the purpose of securing a defendant's appearance. [*Id*. (citation omitted).]

As an initial matter, we note that defendant relies on MCL 791.225a to assert that he is entitled to a recalculation of his tether fees. While MCL 791.225a includes a $60 monthly limit for electronic monitoring device fees, that statute addresses the Department of Corrections' collection of supervision fees associated with postconviction electronic monitoring for offenders sentenced on a delayed sentence or offenders sentenced to probation. See MCL 791.225a. In the present case, the trial court ordered a GPS tether for defendant as a condition of his bond prior to trial. Thus, MCL 791.225a does not apply here.

More importantly, the record reflects that the trial court appropriately imposed the GPS tether to secure defendant's appearance at subsequent hearings. See *Godfrey*, ___ Mich App at ___; slip op at 2. At a pre-trial hearing on defendant's motion to reduce his bond, the trial court reluctantly granted him a personal recognizance bond. In doing so, however, the trial court expressed concern about the fact that defendant previously failed to appear for an unrelated criminal hearing in 2017, which subjected him to a bench warrant in that matter. Simply put, the fact that defendant had a history of failing to appear shows that the GPS tether was properly imposed to secure his appearance in the instant proceedings.[8] Accordingly, because the record clearly indicates that the GPS tether was imposed to secure defendant's appearance while out on bond, the trial court did not plainly err by imposing statutorily permissible fees for the GPS tether under MCL 769.1k(2). See *Carines*, 460 Mich at 763.

## VIII. CONCLUSION

There are no errors warranting relief. Consequently, we affirm.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman

---

[8] In fact, defendant failed to appear for a hearing about a month after his jury trial, causing the trial court to inform his defense counsel that it would issue a bench warrant if defendant did not appear within 48 hours.